**INDIANA & ILLINOIS COAL CORPORATION et al. v. CLARKSON.**

No. 5972.

Circuit Court of Appeals, Seventh Circuit.

June 30, 1937.

Rehearing Denied Sept. 15, 1937.

Clarence E. Mehlhope and Clarence F. Poole, both of Chicago, Ill., for appellants.

John H. Bruninga, of St. Louis, Mo., (John T. Clarkson, of Albia, Iowa, John H. Sutherland, of St. Louis, Mo., and Ralph F. Lesemann, of East St. Louis, Ill., of counsel), for appellee.

Before EVANS and SPARKS, Circuit Judges, and LINDLEY, District Judge.

SPARKS, Circuit Judge.

This appeal involves the validity and infringement of United States patent No. 1,904,355. It was issued to appellee on

April 18, 1933, on his application filed July 23, 1930. The patent relates to a power loader for use in loading coal and the like into mine cars or other transporting means. Its alleged objects are to provide a machine for loading coal which has been shot down directly on mine cars and which will be capable of continuing such loading without interruption; to provide an improved gathering mechanism for a loader of this type which will move the material from the gathering point and deliver it to a suitable conveyor in a positive manner and in such a way that the gathering mechanism does not interfere with the delivered material; to provide a loader of this type with a flat belt conveyor together with means for effectively driving the conveyor, which machine will be capable of loading an increased quantity of material in a given time; and to provide a loader in which the gathering mechanism can be swung from side to side and the machine as a whole moved toward or away from the material to be loaded; and to provide control devices by means of which all these operations may be accomplished in a simple and expeditious manner.

The District Court held the patent valid and infringed as to claims 11 to 15 inclusive, [1] and from that decree this appeal is prosecuted.

It will be observed that the claims relate only to the gathering head and gathering chains and picks and their relation to the elevating conveyor at the front end of which they are mounted. By this relation the material is said to be delivered to the elevating conveyor in such a way that the gathering mechanism does not interfere with the delivered material.

The elevating conveyor consists of a U-shaped trough with upright side walls and flat bottom, inclined upwardly to the rear, and an endless flat belt extending between pulleys at opposite ends of the conveyor frame. The upper reach of the belt travels over, and is supported by, the

[1] "11. A loading machine of the character described, comprising, an elevating conveyor at the front of the machine extending upwardly and rearwardly, a gathering head overlapping said conveyor and having a way therealong, and gathering means moving on said head operable to progress the material over said way in the path of said means and on to said conveyor, said conveyor moving in a path spaced from that of said gathering means sufficiently to free the material lumps therefrom.

"12. A loading machine of the character described, comprising, an elevating conveyor at the front of the machine extending upwardly and rearwardly, a gathering head overlapping said conveyor and having a way therealong, and gathering means moving on said head operable to progress the material over said way in the path of said means and on to said conveyor, said gathering means then turning outwardly to a return path, said conveyor moving in a path deviating from that of said gathering means sufficiently to cause said means to clear the material lumps at the turning point.

"13. A loading machine of the character described, comprising, an elevating conveyor at the front of the machine extending upwardly and rearwardly, a gathering head overlapping said conveyor and having a way therealong, and gathering means having picks movable over said way in a path extending along said conveyor to progress the material over said way and on to said conveyor, the picks then moving outwardly to a return path, the path of said picks at their outward movement being spaced above said conveyor sufficiently to clear the material lumps thereon.

"14. A loading machine of the character described, comprising, an elevating conveyor at the front of the machine extending upwardly and rearwardly, a gathering head overlapping said conveyor and having a way therealong, and a gathering chain having picks movable in a path leading inwardly of said head beyond the end thereof, then upwardly over said way and extending along said conveyor to progress the material thereonto, said chain then moving outwardly to a return path, the path of said chain at its outward movement being spaced above said conveyor sufficiently to clear the material lumps thereon.

"15. A loading machine of the character described, comprising, an elevating conveyor at the front of the machine extending upwardly and rearwardly, a gathering head overlapping said conveyor and having a way therealong, and a pair of gathering chains having picks movable in paths leading inwardly toward each other beyond the end of said head, then upwardly over said way and extending along said conveyor to progress the material thereonto, said chains then moving outwardly away from each other to return paths, the paths of said chains at their outward movement being spaced above said conveyor sufficiently to clear the material lumps thereon."

flat bottom of the trough. A flat plate, called a gathering head, shovel, shoe or apron, is disposed at the front end of the conveyor, and extends from a point forward of and beyond the conveyor rearwardly and upwardly at an angle greater than that of the conveyor, and overlaps the front end of the conveyor. Gathering means, which consist of endless chains with picks or cutters are mounted on the gathering head.

The gathering picks sweep the material to be gathered upon the gathering plate beyond the forward edge of which they extend, and push it rearwardly up the incline of the plate until it drops off its rear edge upon the conveyor belt, which in turn carries the material upwardly and delivers it to the rear conveyor. When the shovel is inserted under a pile of material a series of hooks or cutters, with which the endless chains are armed, assists in working the material away from the entering edges of the shoe so that it may be worked under the pile of material. The cutters also move upwardly along the inclined path formed by the slope of the shoe so as to gather the material between the two endless chains, and move the same upwardly on the shoe. At a suitable point over the lower end of the conveyor belt the shoe is provided with a delivery edge, over which the material drops to the conveyor belt.

On account of the increased slope of the gathering chains relatively to that of the conveyor belt, the cutters move away from that belt as they move upwardly, being spaced a substantial distance thereabove at the upper end of their shovel, where they begin to turn outwardly about the rear shaft upon which the endless chain travels. By this movement the cutters are carried clear of the material which has been delivered to the belt. Accordingly there is no tendency of the cutters to sweep part of the material off the upper part of the shoe during their outward movement about the shaft. In other words the cutters are moved clear of the delivered material in a vertical direction as the material is carried away on the belt.

Appellants' machine is track-mounted and has a front elevating and rear transfer flight conveyor, with a gathering head or shoe mounted on the front end of the elevating conveyor. Endless gathering chains and arms are mounted on the head or shoe. The inner proximate reaches of the gathering chains diverge laterally towards the upper end of their paths of travel and the gathering arms extend beyond the forward end of the shoe as they pass through the lower orbits of their paths of travel. Power driven mechanism is provided for swinging the front elevating conveyor, together with the head and gathering mechanisms carried thereby, about a horizontal and about a vertical axis to attack the coal at the desired points. The delivery edge of the head is approximately on a level with the top edges of the flights of the conveyor, the front end of which begins at said delivery edge; and the gathering arms with their chains move upwardly from the plane of the conveyor as they approach the upper ends of their paths of travel where they turn outwardly away from the conveyor. The conveyor moves at a more rapid rate of speed than that of the gathering chains in the ratio of about 3 to 1.

The cutter arms or picks are pivotally connected to the chains to swing on axes perpendicular to the planes of the chains. This permits the cutter arms or picks to yield forwardly in their upward travel above the elevating conveyor when struck from the rear by lumps deposited upon the more rapidly moving elevating conveyor.

It will be observed that each of the claims in issue presents a combination of three elements: (1) An elevating conveyor; (2) a gathering head overlapping said conveyor and having a way therealong; and (3) gathering 'means (chains and cutters) moving on said way to progress the material over said way and on said conveyor.

This combination is found in Newdick patent No. 1,706,313. There the front elevating conveyor is of the flight or scraper type, comprising a U-shaped trough with endless chains and scrapers which drag over the conveyor bottom. At the forward end of the elevating structure is fixed a wide flaring gathering head or apron which has a forward horizontal part extended in advance of the forward end of the elevating conveyor, and a rear part inclined upwardly and rearwardly in parallel relation to the bottom of the conveyor trough over which it laps, the head being spaced over the conveyor and above the plane of travel of the top edges of the conveyor flights. On the gathering head or apron are mounted gathering means consisting of endless gathering belts or

chains with gathering arms, the path and travel of which on the inner proximate reaches of the chains are parallel. The arms which extend forward beyond the head, sweep the coal upon the gathering head or apron, and push it rearwardly and up the inclined part of the apron until it drops off the rear edge of the head upon the bottom wall of the elevating conveyor, over which it laps. The flights of the conveyor then carry the material thus dropped upwardly towards its rear end, from which the material drops to the rear conveyor which in turn delivers it to the cars.

The claims in issue further specify the following characteristics: Claim 11 characterizes the conveyor as "moving in a path spaced from that of the gathering means sufficiently to free the material lumps thereon." In claim 12 it is characterized as "moving in a path deviating from that of the gathering means sufficiently to cause said means to clear the material lumps at the turning point." Claim 13 characterizes "the path" of "the picks at their outward movement" as "spaced above said conveyor sufficiently to clear the material lumps thereon." Claims 14 and 15 refer to "the path of the chain" or "chains" to which the picks are attached, as "being spaced above said conveyor" at their outward movement "sufficiently to clear the material lumps thereon."

The last two claims further provide that the picks shall be "movable in the path leading inwardly * * * beyond the end of the head." This was old in the art (U. S. patent to Cox, No. 1,583,665) and has no bearing on the clearance of the material lumps of coal on the conveyor, which seems to be the vital question before us.

It is obvious that the relative spacing of the conveyor and gathering devices sufficiently to clear the material lumps, whether by deviation of paths as in claim 12, or in mere spaced relation as in the other claims, is a limiting characteristic of each of the claims in issue. By reason of this limitation it is said there is no tendency for the cutters to sweep part of the material off the upper part of the shoe during their outward movement.

Patent No. 1,680,695 to Shanaberger is conceded to be the nearest in anticipation of the claims in issue. It is caterpillar mounted and has an upwardly and rearwardly inclined conveyor, and a gathering head or shoe at its front end. The conveyor is overlapped by the shoe, and endless gathering chains with gathering arms are disposed at each side of the gathering head with the paths of the chains on their proximate reaches diverging laterally as they travel upwardly towards the conveyor. The gathering arms project beyond the gathering shoe as they pass through the lower orbits of their travel. They are pivoted to swing upwardly on axes from the plane of the gathering chains, and are engaged by cams which force them to move away from the conveyor as they pass upwardly and beyond the delivery edge of the gathering head until they have passed laterally beyond the conveyor, and they are thus spaced a substantial distance above the conveyor as they turn outwardly. The cams then permit the gathering arms to return to the plane of the head. Shanaberger said the object of this feature was to provide means whereby the gathering and loading elements would clearly disengage from the material being loaded as it was positioned for engagement with the conveyor, thereby preventing dragging of a portion of the material from the conveyor. Thus we see that his object is identical with the primary object of appellee's disclosure, and, generally speaking, the only difference in the methods of accomplishing that object is that Shanaberger lifted his vertically pivoted picks or cutters by means of a cam, which caused a spaced relation between the cutters and the bottom of the conveyor, at the point where the coal was delivered to the conveyor, sufficient to free the coal, while appellee, whose picks were not vertically pivoted, raised the plane of his gathering head to coincide approximately with the plane of the top of Shanaberger's cam. This likewise caused a spaced relation between the cutters and the bottom of the conveyor, at the point where the coal was delivered to the conveyor, sufficient "to free the material lumps thereon." It is obvious that the three elements in combination in appellee's disclosure, as hereinbefore referred to, are present, in Shanaberger, and they operate very much alike to produce the same result.

In United States prior patent to Jameson, No. 1,577,528, the spaced relation between the conveyor and the gathering arms and chains is found in all respects the same as appellants' machine, except as

to degree, and it is produced precisely as appellants produce it by disposing the gathering plate at an upwardly rising angle to the conveyor. It is contended, however, by appellee that Jameson's transfer conveyor is horizontal and is not an elevating conveyor. We are unable to see why that should materially distinguish the disclosures. He further contends that the gathering arms of Jameson do not travel beyond the front end of the head or shovel, to provide or dig a path for the head under the material. This is true but that feature was not new with appellee, and it has no bearing whatever on the question before us with respect to the spaced relation between the conveyor and the cutters and chains on the gathering plate.

Appellee further contends that the structure of the Shanaberger patent was not successful as a practical machine, never came into practical use or operation, and was abandoned. The evidence is undisputed, however, that it operated successfully on more than 4,000 tons of coal at the rate of a ton a minute, and that the arms or picks did not throw off coal at the upper ends of their paths of travel, nor were they or their connecting pins broken in the operation. Under these circumstances we think it can not be said that the Shanaberger machine was unsuccessful or impractical, or that it did not come into practical operation. It can not be denied that its use was discontinued, or that it did not do its work so well or so rapidly as appellee's or appellants' structures. This we think was due to its lack of competitive value with machines of a more modern type, and that in turn we think was due partly to the instability of Shanaberger cutters, which was caused by their vertical pivoting, and partly to the increased speed of the conveyor belts over that of the gathering chains as disclosed in the structures of both appellee and appellants. This latter feature, however, was old in the art and is not incorporated in any of the claims in issue.

■ With respect to abandonment of the Shanaberger patent, we think appellee's contention is not sound. A mere idea, of course, is not patentable, and the abandonment of a mere experiment to put an idea into concrete form and practical operation will constitute no impediment to a future patentable disclosure. It can not be said that Shanaberger abandoned an experiment of a mere idea, for a patent issued

on that idea and it comes to us with the same presumption of validity as that which attaches to appellee's patent. He may have abandoned the use of that patent, but if so the world was entitled to its disclosures, and appellee is not to be preferred to others in respect thereto.

■ Shanaberger was cited against appellee's application in the Patent Office; Newdick and Jameson were not. Each is presumed to be valid as against those cited against it. None of those cited here against appellee's disclosures exactly covers all the elements contained in the claims, but each element relied upon is to be found in one or more of the patents here cited. It is obvious that the Patent Office considered appellee's application as one in combination, and concluded that it produced an old result in a more facile, economical or efficient way. This conclusion cannot be denied, and we are loath to strike down the conclusions of the Patent Office and the District Court in this respect.

■ We are convinced, however, that under the recited circumstances this patent should not be construed broadly. Appellee was working in a very narrow field, and while he should not be held to unreasonable exactness, yet in determining his range of equivalents we think we should not go beyond his manifest intentions as expressed by the language of his claims. While these claims are quite indefinite as to the spacing required between the paths of the conveyor and the gathering means, yet we assume, as the examiner evidently did, that the spacing might well vary with the circumstances, and that one skilled in the art could readily determine that fact from the character of the coal being conveyed. Despite the indefiniteness of the claims in this respect we think it is clear that in each claim appellee relied principally on the lapping of the gathering means over the conveyor, having a way there along in the path of said means, and a spaced relation between the two. Those elements were incorporated in the claims and we have no right to assume that they were not relied upon by the examiner.

■ In appellants' structure the gathering means do not overlap the conveyor, or have a way over and along it in the path of said means. The point of delivery of the gathering means is where the conveyor begins, and the floor of the gathering means at this point is higher than the

722

floor of the conveyor only a sufficient space to clear the flights of the conveyor, hence there is no spaced vertical relation between them. It is true, portions of the wings of appellants' gathering means extend at lateral angles over the lower portion of the conveyor and are attached thereto, but they carry no coal nor do they form any way over and along the path of the conveyor over which the cutters progress the coal. These wings carry the gathering heads, the rear ends of which diverge or flare from each other, and these angles of divergence correspond to the angles of the wings, hence the cutters of the gathering means at the point of delivery, are carried at an angle away from the median line of the conveyor. True they pass over their respective corners of the front end of the conveyor but they progress no coal over it, because the conveyor belt is traveling faster than the cutters. They interfere with no coal coming from their rear at a faster speed, because the cutters are so pivoted that any force coming from their rear will push them forwardly out of the way.

Every element which appellants employ is found in the prior art hereinbefore cited, and we think appellee's fair range of equivalents does not cover them either separately or in combination. If they do, then by the same process of reasoning the claims in issue are anticipated by the same prior art.

We are not unmindful of the rule that insofar as the findings depend upon conflicting testimony, or upon the credibility of witnesses, or so far as there is any substantial testimony supporting the findings they must be treated as unassailable. However, concerning the existence of the features which we regard as distinguishing one structure from the other there is no controversy. The findings contain certain evidentiary facts such as the testimony of appellee, and certain conclusions of law, which have no proper place in a finding of ultimate facts, and these we have disregarded, together with other findings with respect to elements which are not found in the claims. With the remainder of the findings, or rather the true findings, we do not disagree, but we do disagree with the Court's conclusion of law that there was infringement.

The decree is affirmed as to the question of validity and it is reversed as to infringement.