SIDE-O-MATIC UNLOADER CORP.,
a corporation of Pennsylvania,
Plaintiff,

v.

ALIQUIPPA BLOCK AND SUPPLY COMPANY, a corporation of Pennsylvania, Bopp Manufacturing Company, and Waterloo Unloader Corporation, Defendants.

Civ. A. No. 16003.

United States District Court
W. D. Pennsylvania.

Nov. 3, 1960.

Arnold B. Christen, of Fisher, Christen & Goodson, Washington, D. C., and Julian Miller, of Brown, Critchlow, Flick & Peckham, Pittsburgh, Pa., for plaintiff.

Elmer S. Utzler, William H. Parmelee, Christy, Parmelee & Strickland, Pittsburgh, Pa., for defendants.

MARSH, District Judge.

This is an action by plaintiff, Side-O-Matic Unloader Corporation (Side-O-Matic), a Pennsylvania corporation, for infringement upon claims 9, 10, 13, 14 and 18 of a reissue patent, against Aliquippa Block and Supply Company (Aliquippa), a Pennsylvania corporation located in this District, and against the intervening defendants, Bopp Manufacturing Company (Bopp) and Waterloo Unloader Corporation (Waterloo), both Iowa corporations. Plaintiff is the owner by assignment of the legal title in and to reissue patent No. 24,334 granted June 25, 1957, and of original letters patent No. 2,772,795 granted December 4, 1956, on an application filed October 8, 1954 for a self-loading vehicle hoist. Aliquippa purchased and used two accused constructions from defendant Waterloo, as manufactured by defendant Bopp. All defendants deny the validity and infringement of the reissue patent. They also counterclaim for a declaratory judgment against validity and infringement.[1] The court has jurisdiction of the parties, of the complaint for infringement and of the counterclaim for declaratory judgment. §§ 1338 and 2201, Title 28 U.S.C.A.

Prior to the issuance of the original patent, Side-O-Matic was manufacturing and selling to the public an unloader of the type disclosed in the patent and marked "patent applied for". One of these machines was purchased by Mr. Marquart, President of Marquart Block Company of Waterloo, Iowa. Shortly thereafter Bopp received it for repairs. Bopp, experienced in building custom-designed equipment, was inspired to build and sell unloaders which resembled and functioned similarly to the Side-O-Matic unloader. Two of Bopp's Model 1 unloaders were sold to Marquart Block Company. Shortly thereafter the defendant Waterloo was organized in September, 1956, as vendor for Bopp's unloaders. Mr. Marquart and Mr. Bopp were among the principal stockholders of Waterloo.

Bopp built seven Model 1 unloaders prior to the issuance of the original patent to Side-O-Matic. After the patent was granted, Side-O-Matic notified Bopp and Waterloo of the issuance of said patent and requested Waterloo to respect same. Bopp's attorney advised Side-O-Matic's attorney that there would be no more Model 1 unloaders built, and none were built by Bopp or sold by Waterloo after the original patent issued.

In the meantime Bopp had designed its Model 2 unloader which Bopp claimed did not infringe on Side-O-Matic's patent because of material mechanical differences. Bopp's attorney sent to Side-O-Matic's attorney a complete set of design drawings of Model 2, advising that Model 2 would avoid any question of infringement. Side-O-Matic's attorney acknowledged receipt of the drawings and stated that he and his client would give Bopp's attorney their comments. None were forthcoming. Bopp built a few Model 2 unloaders, one of which was sold to Aliquippa.

Faced with apparent competition, the patentees, with the consent of their assignee, Side-O-Matic, hastened to file an application for reissue.[2] The failure of Side-O-Matic to communicate with Bopp was due to the belief of the former's attorney that it was unwise to do so lest some question of intervening rights might arise.

At oral argument plaintiff conceded that the defendants had intervening rights with regard to Bopp's Model 2 unloader.

Bopp's seven Model 1 unloaders are not involved in the litigation because they were built prior to the issuance of the original patent.

---

1. A charge of unfair competition contained in the counterclaim was withdrawn at trial with prejudice. See T., pp. 725–726.

2. G. L. Cramer, an officer and major stockholder of Side-O-Matic and one of the inventors named in the original patent, testified that application was made for the reissue patent "on the advice of our attorneys. They said we should have better coverage than we had gotten or applied for originally." (T., p. 478.)

After the issuance of the reissue patent on June 25, 1957, and the service of the complaint upon Aliquippa on July 19, 1957, Bopp designed and built its Model 3 and Model 4 unloaders. The Model 2 unloader which had been purchased by Aliquippa from Waterloo on June 29, 1957 was subsequently changed into a Model 3 by Bopp on Aliquippa's premises. In 1958 Aliquippa purchased a Model 4 unloader from Waterloo. The Model 3 and Model 4 unloaders, used in this District by Aliquippa, are the accused structures in this litigation.

Since July, 1957, Bopp has manufactured and Waterloo has sold upwards of 200 accused unloaders, and since March, 1955, Side-O-Matic has sold upwards of 500 unloaders (T., p. 468) manufactured in accordance and in conformance to the disclosures and claims of the reissue patent. Those sold since the patent issued were properly marked by Side-O-Matic.

The unloaders made by both Side-O-Matic and Bopp are used principally by concrete block manufacturers. In concrete block plants, the finished blocks are usually piled in square or rectangular cubes and loaded on trucks for delivery. Since about 1946 there has been increasing development of trucks equipped with unloaders for removing the blocks at destination and for reducing the labor and expense of unloading the blocks at the building site.

■ There are several other unloaders on the market in addition to those of Side-O-Matic and Waterloo.[3] Some of these, including the Curtiss-Wright, Teale and Daybrook unloaders, have cranes mounted on trucks with booms that swing through an arc of 360 degrees. In this market Side-O-Matic's structure may have obtained some commercial success, principally as a result of consistent advertisement of its unloader in leading trade magazines. But mere utility and commercial success, even when established beyond dispute, cannot establish the existence of patentable novelty or invention. Great A. & P. Tea Co. v. Supermarket Equip. Corp., 340 U.S. 147, 153, 71 S.Ct. 127, 95 L.Ed. 162; Altoona Publix Theatres v. American Tri-Ergon Corp., 294 U.S. 477, 487–488, 55 S.Ct. 455, 79 L.Ed. 1005.

■ The claims of a patent measure the invention and they are to be construed in the light of the specifications and the state of the art. Continental Paper Bag Co. v. Eastern Paper Bag Co., 210 U.S. 405, 419, 28 S.Ct. 748, 52 L.Ed. 1122; Altoona Publix Theatres v. American Tri-Ergon Corp., supra, 294 U.S. at page 487, 55 S.Ct. 455. Plaintiff's reissue claims 9, 10, 13, 14 and 18 are set out in the margin.[4]

---

3. Plaintiff's Exhibits VV and YY; T., pp. 476–485.

4. "9. A load supporting bed of a vehicle in combination with a hoist attachable thereto and comprising a mast extending substantially vertically upward therefrom and positioned inward from the ends and sides of said bed between load units of substantially uniform size when said bed is loaded, flat elongated braces extending upward from said vehicle bed and inward towards the upper portion of said mast and the opposite ends of said braces being fixed respectively to said bed and mast, said flat braces being disposed within vertical planes radiating outwardly from the axis of said mast with substantially equal angles between all braces and in vertical coincidence with the vertical boundary planes between said load units, whereby no appreciable load occupying area of said vehicle bed is consumed by said braces and mast and the latter is positioned substantially within the outer boundaries of a load upon said bed when substantially fully loaded, a boom extending radially outward from the upper end of said mast and rotatable substantially horizontally about the axis thereof, and load hoisting and carrying means supported by said boom and engageable with units of said load and operable to hoist the same to load them onto or unload them from said vehicle with a minimum of required length of boom."

"10. The combination set forth in claim 9 further characterized by a pair of said braces extending parallel to the longitudinal axis of said bed and another pair extending transversely thereto, whereby the bed of said vehicle is divided

It is quite apparent that the reissue patent describes a combination of improvements in the field of self-loading vehicle hoists, viz., a bed of a vehicle and a type of jib hoist or crane composed of a number of elements comprising the combination.

Although the specifications and drawings particularize the loading and unloading of cement building blocks on a truck bed, the invention is not limited to this use. The specifications state:

into four substantially similar load receiving areas."

"13. A load supporting bed of a vehicle in combination with a hoist attachable thereto and comprising a mast extending substantially vertifically upward therefrom and positioned inward from the ends and sides of said bed between juxtapositioned load units of predetermined size when said bed is loaded, elongated braces extending upward from said vehicle bed and inward toward the upper portion of said mast and the opposite ends of said braces being fixed respectively to said bed and mast, said braces being disposed within vertical planes radiating outwardly from the axis of said mast with substantially equal angles between all braces and in vertical coincidence with the vertical boundary planes between said load units, said mast being substantially within the outer boundaries of a load upon said bed when substantially fully loaded, whereby no appreciable area of said vehicle bed to be occupied by juxtapositioned load units is consumed or intersected by said braces and mast, a boom extending radially outward from the axis of said mast above the upper ends of said braces and rotatable within a substantially horizontal plane about said axis, a member extending axially within said mast and projecting from the opposite ends thereof, the upper end of said member being connected to said boom and operable to rotate said boom about the axis of said mast, the lower end of said member extending through the bed of said vehicle, power driven means interconnected to the projecting lower end of said member and operable to rotate said member and boom relative to said mast and load hoisting and carrying means supported by said boom and engageable with units of said load and operable to hoist the same to load them onto or unload them from said vehicle with a minimum of required length of boom."

"14. The combination set forth in claim 13 further including a thrust

"More particularly, but without restriction thereto, the hoist is of the type adapted to support and move loads of *material* for purposes of loading the same onto and removing the same from the bed of the vehicle and, more particularly, an automobile truck. * * * [S]aid hoist may be employed for loading and unloading *a wide variety of items* onto and from the vehicle." (Emphasis supplied.)

bearing supported by said bed of the vehicle below the load carrying surface thereof and engaging the lower end of said member to support the vertical load thereof and said boom."

"18. A hoist attachable to the bed of a vehicle and comprising in combination a hollow mast arranged to be fixed at its lower end stationarily to said vehicle bed between the sides and ends thereof and extend vertically upward therefrom, braces connected at one end to the upper end portion of said mast and extending radially outward and downward therefrom, said braces being spaced circumferentially around said mast and the lower ends thereof being connectable to the bed of said vehicle, rotatable elongated thrust means substantially complementary in shape to said mast and extending axially through said mast and projecting from opposite ends thereof, a boom interconnected at one end to the upper end of said thrust means and projecting substantially radially from the axis of said means, the lower end of said thrust means being sufficiently long to project below the load surface of said bed of said vehicle, means bracing said boom relative to said thrust means, anti-friction means engaging the upper end portion of said mast and operable to prevent appreciable tilting of said boom relative to said mast, a thrust bearing arranged to be fixed relative to the bed of said vehicle adjacent the lower end of said mast, the lower end of said elongated thrust means rotatably engaging said thrust bearing, whereby said bearing and thrust means sustain the entire vertical force of said boom and any load supported by said boom, and power operated means connected to the lower end of said thrust means below the load surface of the bed of the vehicle and operable to rotate said thrust member and boom relative to said mast about the axis thereof."

The specifications further state:

"It is to be understood that the hoist comprising the present invention may be adapted to a number of types of vehicles such as railway cars, navigation vessels and road vehicles."

It is clear from the above language that the patent was not intended solely for use in loading and unloading concrete blocks onto and from trucks. Not being so limited, analogous combinations of vehicle beds, jib cranes and hoists for unloading and loading material on vehicles may be examined to test the validity of the claims. The patentee is presumed to have known and is chargeable with knowledge of everything disclosed by the prior art in the field of self-loading vehicle hoists and of all devices which were in that field and which had been in prior public use. Zephyr American Corporation v. Bates Mfg. Co., 3 Cir., 1942, 128 F.2d 380.

Reissue claims 9, 10, 13, 14 and 18 describe a combination improvement comprising an aggregation of old parts or elements in the field of self-loading and unloading vehicle hoists. In order to constitute a patentable invention, an aggregation of old elements must cooperate to produce a new, unobvious and unexpected result. If invention is absent, mere utility and novelty are not alone sufficient to sustain the validity of a combination patent. Hoists, in many respects substantially similar to plaintiff's unloader, have long since been in common use on beds of trucks and other vehicles for loading and unloading materials before and after transportation. This is a crowded art.[5] In considering combination claims for an improvement in a crowded art, it was said in Shaffer v. Armer, 10 Cir., 1950, 184 F.2d 303, 307:

"[T]o make sure that a monopoly is not granted for mere perfection of workmanship, the courts closely scrutinize claims to combinations for improvements in a crowded art. Halliburton Oil Well Cementing Co. v. Walker, 329 U.S. 1, 10, 67 S.Ct. 6, 91 L.Ed. 3."

See also, Cuno Engineering Corp. v. Automatic Devices Corp., 314 U.S. 84, 90, 92, 62 S.Ct. 37, 86 L.Ed. 58.

In Great A. & P. Tea Co. v. Supermarket Equip. Corp., supra, 340 U.S. at pages 150–153, 71 S.Ct. at page 129, the Supreme Court said:

"It is agreed that the key to patentability of a mechanical device that brings old factors into cooperation is presence or lack of invention. * * *

"The negative rule accrued from many litigations was condensed about as precisely as the subject permits in Lincoln Engineering Co. v. Stewart-Warner Corp., 303 U.S. 545, 549 [58 S.Ct. 662, 82 L.Ed. 1008]: 'The mere aggregation of a number of old parts or elements which, in the aggregation, perform or produce no new or different function or operation than that theretofore performed or produced by them, is not patentable invention.' To the same end is Toledo Pressed Steel Co. v. Standard Parts, Inc., 307 U.S. 350 [59 S.Ct. 897, 83 L.Ed. 1334], and Cuno Engineering Corp. v. Automatic Devices Corp., 314 U.S. 84 [62 S.Ct. 37, 86 L.Ed. 58]. The conjunction or concert of known elements must contribute something; only when the whole in some way exceeds the sum of its parts is the accumulation of old devices patentable. * * *

"*Courts should scrutinize combination patent claims with a care proportioned to the difficulty and improbability of finding invention in an assembly of old elements.* The function of a patent is to add to the sum

---

5. Schlough, No. 2,646,180, 1953; Eisberg, No. 2,670,086, 1954; Ormsby, No. 2,109,-304, 1938; Gelbman, No. 2,478,094, 1949; McClain, No. 2,082,017, 1937; Kershaw, No. 2,519,910, 1950; Stedman, No. 1,-470,296, 1923; Anderson, No. 655,321, 1900; and others.

of useful knowledge. Patents cannot be sustained when, on the contrary, their effect is to subtract from former resources freely available to skilled artisans. A patent for a combination which only unites old elements with no change in their respective functions * * * obviously withdraws what already is known into the field of its monopoly and diminishes the resources available to skillful men. This patentee has added nothing to the total stock of knowledge, but has merely brought together segments of prior art and claims them in congregation as a monopoly." (Emphasis supplied.)

Applying these principles to plaintiff's claims 9, 10, 13, 14 and 18, we find as a fact that they are not patentable for lack of invention and are invalid as displaying only the expected skill of the art. § 103, Title 35 U.S.C.A.

Counsel for Side-O-Matic at oral argument conceded that reissue claims 9 and 10 (identical to claims 9 and 10 in the original patent) are invalid as being anticipated by the "Magic Muscle", a concrete block unloader manufactured by Bros, Inc.[6] and in public use prior to the granting of the original patent to Side-O-Matic.

Claims 13, 14 and 18 describe the same combination and elements as do claims 9 and 10 with the addition of power means interconnected to the projecting lower end of the thrust member, supported by the bed of the vehicle below the load carrying surface, a thrust bearing to support the vertical load, and the power means operable to rotate the thrust member and the boom. These elements are old in the art and their addition to the admittedly anticipated combination does not in our opinion constitute patentable invention. Several prior art patents disclose that machine power (as distinguished from manual power) for swinging the boom of a hoist or crane was known prior to the filing date (October 8, 1954) of the application for the original patent in suit. Among the prior art patents disclosing mechanized power means are: Healey, No. 1,686,658, 1928; McClain, No. 2,082,017, 1937; Forslund, No. 2,528,588, 1950.

The mechanizing of hand operated devices is a well known expedient and one which is devoid of any basic novelty of a patentable nature. Cleveland Punch & Shear Works Co. v. E. W. Bliss Co., 6 Cir., 1944, 145 F.2d 991, 994. Cf. Altoona Publix Theatres v. American Tri-Ergon Corp., supra, 294 U.S. at page 486, 55 S.Ct. 455; Buffalo-Springfield Roller Co. v. Galion Iron Wks. Mfg. Co., 6 Cir., 1954, 215 F.2d 686, 688; and see testimony of plaintiff's expert (T., p. 410).

There is no patentable co-relation between the combination of power means specifically located, on the one hand, and the invalid combination of a jib crane mounted on or attachable to a bed of a vehicle, on the other. The instant combination is simply an adaptation of old or well known devices for uses which certainly were anticipated by the prior art.* It has been stated many times that "the mere aggregation of a number of old parts or elements which, in the aggregation, perform or produce no new or different function or operation than that theretofore performed or produced by them, is not patentable invention." Great A. & P. Tea Co. v. Supermarket Equip. Corp., supra, 340 U.S. at page 151, 71 S.Ct. at page 130; Cuno Eng. Corp. v. Automatic Devices Corp., supra; Mojonnier Bros. Co. v. Tolan Machinery Co., 3 Cir., 1956, 230 F.2d 850, 851; Stanley Works v. Rockwell Mfg. Co., 3 Cir., 1953, 203 F.2d 846; Packwood v. Briggs & Stratton Corp., 3 Cir., 1952, 195 F.2d 971, 973.

[7, 8] The most that can be said for the reissue claims in suit is that they

---

6. Defendants' Exhibit W–A. Bros, Inc. was a licensee under Schlough et al. patent No. 2,646,180, issued 1953.

* See footnote 5, supra, and the prior art patents disclosing power means.

disclose a structure which is new and useful; but it must be more than that to be patentable. An old combination may not be repatented merely because of improvements in the construction of particular elements. Lincoln Engineering Co. v. Stewart-Warner Corp., 303 U.S. 545, 549, 58 S.Ct. 662, 82 L.Ed. 1008; Bassick Mfg. Co. v. R. M. Hollingshead Co., 298 U.S. 415, 56 S.Ct. 787, 80 L.Ed. 1251. No unusual or unexpected result was achieved by combining elements well known in the prior art; only better results were obtained by the strengthening of material and addition of power means. The old elements in plaintiff's reissue claims were made larger and heavier in order to carry heavier loads which involved merely a change in form, proportion or degree. The mere carrying forward of extended application of earlier ideas or conceptions of others, involving a change only in form, proportion or degree, where the same work is performed in substantially the same way by substantially the same means, although with better results, is not invention. Cole v. Hughes Tool Company, 10 Cir., 1954, 215 F.2d 924, 944. "A mere advance in efficiency and utility is not enough to convert a non-inventive aggregation [of old elements and parts] into a patentable combination." Buffalo-Springfield Roller Co. v. Galion Iron Wks. Mfg. Co., supra, 215 F.2d at page 687.

Having found the reissue claims invalid, we do not reach the question of infringement.[7] Stanley Works v. Rockwell Mfg. Co., supra; National Transformer Corp. v. France Mfg. Co., 6 Cir., 1954, 215 F.2d 343; Wintermute v. Hermetic Seal Corp., D.C.N.J.1959, 171 F. Supp. 770.

We are satisfied that the defendants have met their burden of establishing invalidity of the reissue claims in suit and have done so by clear, satisfactory and convincing evidence beyond a reasonable doubt. Crosley Corp. v. Westinghouse Electric & Mfg. Co., 3 Cir., 1945, 152 F.2d 895; Walker on Patents, Deller's Ed., Vol. 2, § 276, p. 1272.

The complaint will be dismissed, and judgment will be entered in favor of the defendants on that part of the counterclaim seeking that claims 9, 10, 13, 14 and 18 of the reissue patent be declared invalid, together with costs.

This opinion shall be deemed to embody the court's findings of fact and conclusions of law required by Rule 52, Fed.R.Civ.P., 28 U.S.C.A.

The defendants shall present an appropriate decree within fifteen (15) days.

---

7. With regard to infringement, it seems clear that, among other differences, in Bopp's accused structures the boom is attached to a post extending above the mast or pedestal and rotates independently thereof instead of rotating around the top of the mast by bracing means as in plaintiff's structure. In this respect Bopp's accused structures more closely follow the prior art, with power means added, than they do the plaintiff's structure. See: Lathrop, No. 358,558, 1887; Pierce, No. 2,415,907, 1947; Garland, No. 2,571,858, 1951; Ormsby, No. 2,109,304, 1938; Humpal, No. 2,588,928, 1952; and Forslund, No. 2,528,588, 1950. In the foregoing respect Bopp's pedestal does not function as does the plaintiff's mast. In addition, Bopp's hoist is attachable to the chassis of the vehicle rather than to the bed as in plaintiff's structure; and Bopp's Model 4 has only three supporting braces instead of four as in plaintiff's structure. In our opinion these differences tend to negative infringement in a crowded art because Bopp secured a similar result by other means. Computing Scale Co. v. Automatic Scale Co., 204 U.S. 609, 621, 27 S.Ct. 307, 51 L.Ed. 645; Air Devices v. Air Factors, Inc., 9 Cir., 1954, 210 F.2d 481; Brandtjen & Kluge v. Joseph Freeman, Inc., 2 Cir., 1937, 89 F.2d 25, 28. Under the doctrine of equivalents, a limited patent must be strictly construed and little latitude is permitted in the way of equivalents. Wheat v. Ford Motor Co., 8 Cir., 1941, 118 F.2d 612, 614; Beegle v. Thomson, 7 Cir., 1943, 138 F.2d 875, 878; Indiana & Illinois Coal Corp. v. Clarkson, 7 Cir., 1937, 91 F.2d 717, 721.