644

CHEMICAL CONSTRUCTION CORPO-
RATION, Plaintiff

v.

JONES & LAUGHLIN STEEL CORPO-
RATION, Defendant.

Civ. A. No. 17679.

United States District Court
W. D. Pennsylvania.

Aug. 11, 1961.

John G. Buchanan, Jr., of Buchanan,
Ingersoll, Rodewald, Kyle & Buerger,
Pittsburgh, Pa., Walter Free, New York
City, for plaintiff.

Walter J. Blenko, Blenko, Hoopes,
Leonard & Buell, Pittsburgh, Pa., for de-
fendant.

MARSH, District Judge

This action is for infringement of
United States Letters Patent 2,604,185
for "Method and Apparatus for Treating
Gases" in which plaintiff seeks damages
and injunctive relief.

The Patent was issued on July 22, 1952
to Henry F. Johnstone and Alfred W.
Anthony, Jr., assignors to Pease-Anthony
Equipment Company.

By agreement dated November 1, 1948,
Pease-Anthony Equipment Company
granted to plaintiff an exclusive license
under United States Patent Application
Serial No. 708,746, filed November 8, 1946
(the application that eventually issued
as the Patent) with certain exclusions.

By instrument of assignment the Pat-
ent and all rights thereunder for past
infringement were duly and legally as-
signed to the plaintiff on November 22,
1958, and since said date plaintiff has
been and still is the owner of the Patent.

I find the following facts:

■ 1. The J–A Patent relates to the cleaning of solid particles from gases, sometimes referred to as scrubbing or washing the gas. It discloses a duct of rectangular or circular cross-section having a converging section and a diverging section joined at their smaller ends by an intermediate throat section. The gas to be cleaned is passed into the converging section where it is accelerated due to passage through the diminishing cross-section of the passage, then through the throat section, and then through the diverging section where its velocity is decreased and there is a substantial recovery of the pressure lost in acceleration. The gas passage is referred to in the J–A Patent as a "Venturi passage". The Patent discloses nozzles directed inwardly from around the periphery of the throat as well as outwardly from a pipe placed axially within the throat. A washing liquid, usually water, is injected into the throat through the nozzles, which may be either open-ended tubes or spray nozzles "of the pressure-atomizing type", an object being to obtain complete coverage of the wash water across the moving gas stream and to obtain fine atomization of the washing liquid by impaction of the gas moving at the high relative velocity with respect to the liquid thereby to obtain high relative velocity between the atomized droplets and the suspended particulate matter. The solid particles in the gas thereby come into contact with the water and are entrained thereby. The dust-laden wash water is thereafter separated from the gas.

2. The J–A patent claims here in suit are 5, 6, 8 and 9.[1]

3. The use of washers or scrubbers for cleaning gas is an old and crowded

---

1. "5. Apparatus for washing gases to remove finely divided matter therefrom, comprising a Venturi passage within which the gas is accelerated, and means for introducing washing liquid into the accelerated gas stream within the passage comprising a plurality of nozzles having discharge apertures for discharging solid jets of washing liquid in spaced relation over the stream cross-section and transversely of and in penetrating relation to the moving gas stream whereby the gas stream impinges on said jets at a relative velocity substantially that of the velocity of the accelerated gas stream within the Venturi passage to disrupt the jets of liquid in turbulent extended-surface contact between the liquid and the gas."

"6. Apparatus for washing gases to remove finely divided matter therefrom, comprising a Venturi passage within which the gas is accelerated, and means for introducing washing liquid into the accelerated gas stream within the passage comprising a plurality of nozzles disposed in spaced relation around the Venturi passage, said nozzles having discharge apertures for discharging solid jets of washing liquid inwardly of and substantially normal to the walls of said passage in penetrating relation to the accelerated gas streams to cause the said gas stream to impinge on said jets at a relative velocity substantially that of the accelerated stream within the passage and thereby disrupt the liquid jets in turbulent extended-surface contact between the liquid and the gas."

"8. The method of washing gases to remove finely divided matter therefrom which comprises directing the gas to be treated through a treating passage while accelerating the gas, introducing into the accelerated gas stream within the treating passage and in spaced relation over the stream cross-section a plurality of discrete solid jets of washing liquid, said jets of washing liquid being directed transversely of the gas stream to penetrate the stream and cause the accelerated gas and suspended matter to impinge on and disrupt the liquid jets in turbulent extended-surface contact between the gas and the liquid, and thereafter separating the suspended droplets from the gas."

"9. The method of washing gases to remove finely divided matter therefrom which comprises directing the gas to be treated through a treating passage while accelerating the gas, continuously maintaining within the accelerated gas stream and in spaced relation over the stream cross-section within the treating passage discrete masses of washing liquid, said masses of washing liquid being introduced tranversely of the gas stream to penetrate the stream and cause the accelerated gas and suspended matter to impinge on and disrupt the liquid masses in turbulent extended-surface contact between the gas and the liquid, and thereafter separating the suspended droplets from the gas."

art; the art includes cleaning blast furnace gas and other industrial gases.

4. I find that each element of claims 5, 6, 8 and 9 is anticipated by the prior art.

5. I find that claim 5 as broken down into its component elements is anticipated in each element by the prior art as follows:

(a) "Venturi passage within which the gas is accelerated";

The use of a Venturi passage for the purpose of accelerating gas to be cleaned is taught by British Patent 5689, dated August 3, 1901,—hereafter referred to as the Danner patent. Danner stated on page 3, lines 36–38 of his patent (defendant's Ex. 51):

"The passage of the gas * * * is accelerated by a blower *h*, and narrowed pipe *h¹* belonging thereto, or other means, so that the gas issues from the pipe *d* [Venturi] and enters the pipe *f* [Venturi] with great velocity." (See also finding 5(c) infra.)

(b) "means for introducing washing liquid into the accelerated gas stream within the passage";

The Danner patent discloses means for introducing washing liquid into the accelerated gas stream within the passage, and in that regard anticipates element (b) of plaintiff's claim 5. (See also (c) below.)

(c) "nozzles having discharge apertures for discharging solid jets of washing liquid in spaced relation over the stream cross-section";

The Bowen Research Corporation Venturi Washer as early as 1940 utilized a fixed supply pipe extended axially into the throat of a Venturi passage whereby the washing liquid flowed in jets through various saw cuts in the fixed supply pipe in spaced relation over the gas stream cross-section.[2] The patentee Anthony knew of this prior public use by Bowen.

In fact, the Bowen washers were fully described and illustrated in various printed publications of Bowen Research more than one year prior to the filing date of the patent in suit. The Bowen patent was not disclosed to the Patent Examiner.

(d) "transversely of and in penetrating relation to the moving gas stream";

The Bowen Washer above-mentioned injects the washing liquid transversely across the gas stream as the stream moves into the converging section of the Venturi, and this is done with sufficient force to penetrate the gas stream and deposit washing liquid on the wall of the converging section of the Venturi.

(e) "the gas stream impinges on said jets at a relative velocity substantially that of the velocity of the accelerated gas stream within the Venturi passage";

While this element is descriptive of the operation of the J–A patent and not of the apparatus, I find as a fact that the Bowen Washer previously-mentioned functions in operation in this manner also and to that extent anticipates this element of claim 5. (T., pp. 534, 665.)

(f) "to disrupt the jets of liquid in turbulent extended-surface contact between the liquid and the gas".

This element is anticipated by the Danner patent cited supra.

6. Claim 6 is anticipated by the prior art as follows: Claim 6 differs from claim 5 essentially only in specifying that the nozzles are so arranged as to discharge solid jets of washing liquid "inwardly of and substantially normal (i. e., at right angles) to the walls of said passage." I find that there is no significant difference between that arrangement and the one disclosed by Bowen (see finding 5(c)), the object of both being to obtain a relative velocity between the gas and the washing liquid in the zone of impact.

2. Defendant's Exs. 21A, 23; T., p. 534, Dedert deposition, defendant's Ex. 57 at pp. 23, 26.

7. Claim 9 as broken down into its component elements is anticipated by the prior art as follows:

(a) "directing the gas to be treated through a treating passage while accelerating the gas";

This element is anticipated by Danner (see finding 5(a)).

(b) "continuously maintaining within the accelerated gas stream * * * discrete masses of washing liquid";

(c) "in spaced relation over the stream cross-section within the treating passage";

(d) "said masses of washing liquid being introduced transversely of the gas stream to penetrate the stream";

These elements were disclosed by the Bowen Research Corporation Venturi Washer as early as 1940. (See findings 5(c) and 5(d).)

(e) "cause the accelerated gas and suspended matter to impinge on and disrupt the liquid masses in turbulent extended-surface contact between the gas and the liquid";

This element is anticipated by the Danner patent cited supra.

(f) "thereafter separating the suspended droplets from the gas".

This is disclosed by the Danner patent which states that "the condensed matter which contains the impurities accumulates in a vessel * * * and also accumulates in the bottom receptacle * * * and may be removed therefrom."

8. Claim 8 differs from claim 9 essentially only in that in place of element (b) under claim 9 the following appears: "introducing into the accelerated gas stream within the treating passage * * a plurality of discrete solid jets of washing liquid". This element in claim 8 is anticipated by Danner (see finding 5(b)).

9. In addition to the afore-mentioned specific findings of anticipation of plaintiff's patent in the prior art, I also find that the basic underlying concepts of plaintiff's patent are old in the art:

(a) The cleaning of gas by passing dirt-laden gas through water or another washing liquid is old. Dye patent 420,-378, dated January 28, 1890 (defendant's Ex. 50) shows a gas pipe through which dirty gas is passed. A sheet of water is projected transversely across the gas pipe so that the gas will be brought into contact with the water and impurities thereby removed from the gas.

(b) The concept of accelerating gas for more efficient cleaning was taught by Danner as early as 1901 in his British patent 5689.

(c) The use of a Venturi to accomplish this acceleration was also disclosed by Danner in 1901.

(d) Danner further taught in his patent the principle of increasing the relative velocity of the gas towards the washing liquid. On page 3 of his British patent 5689, lines 26–28 (defendant's Ex. 51) he states:

"Our new process for the cleansing and purification of gas is based upon this principle of increasing the relative velocity of the gas towards the cleansing agent * * *."

10. The mechanisms of atomization of liquid and the methods of cleaning gas by impaction between the gas and liquid by increasing the relative velocity of the gas towards the liquid are fully disclosed in the prior art.

11. The limitations in method claims 8 and 9 of the J–A patent to "discrete masses" and "discrete solid jets" do not appear in these words in the specifications. However, the word "discrete" is not a term of art and may include separate chunks of liquid ranging from a droplet to a solid jet, large mass, film or filament. Hence new matter was not added by amendments in 1950 and 1951 more than one year after public use which occurred in 1947. The prior art, without using the word, discloses that "discrete" masses, jets, droplets, etc. of liquid were injected across the gas stream.

12. The accused orifice washers seem to perform the same function and ac-

complish the same result as the J–A washers; but whatever the accused washers have in common with the J–A washers, they also have in common with the prior art, i. e., Brassert, Lambert, Dye, Conkling, Rumely.

■ 13. The accused washers do not infringe upon the claims in suit, if valid. Under the doctrine of equivalents, a limited patent in a crowded art must be strictly construed and little latitude is permitted in the way of equivalents. Wheat v. Ford Motor Co., 8 Cir., 1941, 118 F.2d 612, 614; Beegle v. Thomson, 7 Cir., 1943, 138 F.2d 875, 878; Indiana & Illinois Coal Corporation v. Clarkson, 7 Cir., 1937, 91 F.2d 717, 721.

14. In instituting this suit for infringement and pursuing its legal remedy through trial on material issues of fact, I do not find that plaintiff was guilty of bad faith, fraud, undue harassment, nor that the action was wholly unfounded so that I could characterize the suit as an "exceptional case" entitling defendant to attorney fees.

### Comment

The application for the patent in suit had a difficult passage through the Patent Office. The file wrapper discloses that claims similar to those in suit were repeatedly rejected.

The apparatus claims and the method claims are related and founded on the same mental concept; all four of them, however, consist of elements known in the art of gas cleaning. Nothing is added to the sum of human knowledge to justify the award of a patent monopoly. Because of refinements resulting from research by persons skilled in the art, the J–A washers are useful and have had some degree of commercial success. They display the expected skill of the art. Although the structure is useful, it must be more than that to be patentable.

■ The patentees are presumed to have known and are chargeable with knowledge of everything disclosed by the prior art in the field of cleaning gas.

Even the disclosure of a paper patent (Danner) furnishes anticipation fatal to patentability. Zephyr American Corporation v. Bates Mfg. Co., 3 Cir., 1942, 128 F.2d 380.

Plaintiff contends that the invention lies in the concept of atomizing the injected washing fluid by accelerating the gas, i. e., gas atomization obtaining efficient impaction and collection of extremely small particles of matter in the gas. See: Argument, pp. 28–29. It claims this is a new result. Although the claims do not in terms mention gas acceleration to "high" velocity, it may be fairly found from the specifications that the fluid is atomized by accelerated gas and collects particles in the gas by impaction. The same principle was invented long ago and suggested in Danner, Bowen, Brassert (British), Otto, and others. Other than Otto, the Patent Examiner apparently did not learn of this prior art; they are not included in the references.

Danner may have had an erroneous explanation of the phenomena he discovered, but he discloses that injection of liquid against the gas in "discrete" masses, i. e., droplets, will clean high velocity gas by impaction. As plaintiff admits (Argument, p. 46), "Danner shows the phenomena of particles, [collected by] droplet subdivision which is due to gas." But, plaintiff contends, Danner did not use high velocity gas. Danner does suggest, however, that in a Venturi, the relative velocity of the gas and the cleaning agent should be increased to "great velocity"[3] which, of course, if impacted, gas atomization of the liquid ensues, thus removing, as Danner says, all impurities such as soot, dust and tar contained in the gas. All that plaintiff did as a result of experimentation was to adopt an apparatus and process (both old in the art), increase their efficiency to a degree of usefulness in cleaning industrial gases, and explain to some extent how this known concept cleaned the gas.

3. See Danner's first claim.

Explanation of how a process works is not necessary to obtain a patent. Eames v. Andrews, 122 U.S. 40, at pages 55, 56, 7 S.Ct. 1073, at pages 1081–1082, 30 L.Ed. 1064; Radiator Specialty Co. v. Buhot, 3 Cir., 1930, 39 F.2d 373, 376. Conversely a later explanation of a previous invention is not sufficient to obtain a patent. The theory or principle of operation of a device is not patentable. It appears from the specifications that the patentees were not certain that they could completely explain the phenomena.[4]

Difference in degree or a mere carrying forward of an old concept is unpatentable. There is no invention by carrying out a process suggested by references of record (Danner and Bowen) and finding it to be successful.

It is not invention to perceive that the method which others had discovered had qualities they failed to detect. General Electric Co. v. Jewel Incandescent Lamp Co., 326 U.S. 242, 66 S.Ct. 81, 90 L.Ed. 43.

A mere carrying forward or new or more extended application of the original thought, a change only in form, proportions, or degree is not invention. Smith v. Nichols, 21 Wall. 112, 88 U.S. 112, 119, 22 L.Ed. 566.

Progressive adaptation of well-known devices is but a display of the expected skill of the calling and involves only exercise of ordinary faculties of reasoning upon the materials supplied by a special knowledge, and the facility of manipulation which results from its habitual and intelligent practice, and hence does not constitute patentable invention. Concrete Appliances Co. v. Gomery, 269 U.S. 177, 185, 46 S.Ct. 42, 70 L.Ed. 222. No novel elements appear in the claims in suit over the prior art.

Conclusions of Law

1. This action arises under the Patent Laws of the United States and this court has jurisdiction thereof pursuant to the provisions of § 1338, Title 28 U.S.C.

2. Defendant has, beyond a reasonable doubt and by clear and convincing proof, overcome the presumption of validity of the claims in suit.

3. Since the apparatus claims 5 and 6 and the method claims 8 and 9 are invalid in that they do not reveal invention or novelty over the prior art, or, if valid, are not infringed by defendant's accused structures, the plaintiff's claims for damages and injunctive relief should be denied.

4. This is not an exceptional case which would require awarding attorney's fees to defendant, the successful party.

The defendant shall present an appropriate order within 15 days.

---

4. See claims for cleaning gas in a Venturi based on a concept different from Danner, which claims were rejected by the Court on ground of lack of invention over prior art. Application of Holmberg, 1957, 242 F.2d 791, 44 C.C.P.A. 865.