Bryan W. NICKERSON, Jr., Plaintiff-
Appellee,

v.

The BEARFOOT SOLE COMPANY, Inc.,
The Bearfoot Airway Corporation,
Defendants-Appellants.

No. 14609.

United States Court of Appeals
Sixth Circuit.

Dec. 28, 1962.

As Amended Jan. 10, 1963.

for a side wall attachment for vehicle tires, valid and infringed by the Bearfoot Companies, the licensees of Barnes, under the latter's patent 2,621,979.

The side wall attachments involved in this case are chiefly ornamental, of an elastic material, and are mainly used to give the smart effect of the more expensive white rubber side wall tires, which have been the fashion for some years, as well as to give some added protection to the sides of the tires. When used with the tire, the side wall attachment must cling to the outer portion of the tire, as a practical matter, and, also, to give an attractive appearance, not only to the tire, but to the ensemble of the automobile.

The determining issues on review are whether the claims in appellee's patent are valid and infringed, which, in this case, present also the questions whether there is substantial identity between appellee's side walls and the accused side walls; and, further whether appellee's patent is operable.

The clearest and strongest evidence to sustain Nickerson's patent is to be found in the testimony of Dr. Paul L. Hoover, the expert witness for appellee, who declared that Nickerson, by designing and proportioning the side wall in a distorted shape made it hug the tire; that by molding the side wall so that its unstressed condition was different from its stressed condition, the inherent resilience and internal stress of the side wall would hold it in place without the necessity of springs or other auxiliary means. Appellants contended that Nickerson did no more than make the side wall with an inward bend; that this was old; and that this method was employed in Barnes' patent and in the accused side walls, which were made in accordance with the Barnes' patent, omitting the springs which were deemed unnecessary by appellants, and which were never used by either Barnes or by the appellants in making the molds for the side walls or the side walls themselves.

Nickerson based his principal claim of infringement on the contention that ap-

Everett R. Hamilton, Akron, Ohio (Ely, Frye & Hamilton, Mack D. Cook, II, Akron, Ohio, on the brief), for appellants.

·George V. Woodling, Cleveland, Ohio (Woodling, Krost, Granger & Rust, George V. Woodling, Charles R. Rust, Cleveland, Ohio, on the brief), for appellee.

Before McALLISTER, Circuit Judge, and BOYD and THORNTON, District Judges.

McALLISTER, Circuit Judge.

This is an appeal in a patent case in which the court found plaintiff-appellee Nickerson's reissue patent, Re. 24,518,

pellants had appropriated his "principle of resiliency," which he claimed was the "spark" or "essence" or "inventive difference" of his invention over the prior art. Other contentions on patentability and infringement advanced by appellee Nickerson in the district court were embodied in his counsel's proposed findings of fact and conclusion of law, all of which were adopted by the district court without change, and without the filing of an opinion.

In these findings of fact the district court, inter alia, found:

"The plaintiff's side wall is molded to an initial shape (unstressed position) so that as the tire is inflated, the side wall is distorted from its initial shape to an operative (stressed) position, building up forces therein which hold it resiliently against the side of the inflated tire. The plaintiff's side wall has incorporated therein a 'principle of resiliency' which means that the side wall is so shaped that its resilience holds it against the inflated tire.

"Plaintiff's original patent No. 2,-691,550 issued with two claims (1 and 2). The reissue patent contains the original two claims, 1 and 2, and also an additional claim 3. Plaintiff's reissue claims 1, 2, and 3 are dominating claims and are directed to the 'principle of resiliency,' which is neither shown or described in the prior patents set forth in defendants' answer.

"The 'principle of resiliency', as set forth in reissue claims 1 and 2, is defined by the expression, 'said side wall being biased outwardly and frictionally embracing the tire when the tire is inflated'; and in claim 3 by the expression, 'the body portion having an unstressed cross sectional shape defining a plane that is axially inwardly of the operating position of said body portion.'

"The defendants acknowledge that plaintiff's 'principle of resiliency' is the 'spark' or 'essence' or 'inventive difference' of plaintiff's invention over the prior art.

"Defendants manufacture, and sell side walls for tires which comprise a unitary annular body portion and a recessed lip portion the same as plaintiff's side wall. Defendants' body portion and lip portion coact to cause the body portion of the side wall to engage the inflated tire. During mounting, as the tire is inflated, the body portion is biased outwardly from an unstressed position to a stressed position, thereby producing a distortion which is the same as that produced in plaintiff's side wall, which builds up forces for holding the body portion resiliently against the side of the inflated tire. Thus, the defendants' accused side walls have appropriated plaintiff's 'principle of resiliency,' in that their side walls are so shaped that their resilience holds them against the inflated tire.

"There is substantial identity between the plaintiff's and defendants' side walls, as they do substantially the same work in substantially the same way and accomplish the same results.

"The plaintiff's reissue claims 1, 2 and 3 in suit, read directly on the defendants' accused side walls, which means that the defendants' accused side walls embody the invention claimed in the reissue claims 1, 2 and 3.

"The defendants' accused side walls, Stipulation Exhibits 1 to 10, embody each and every principle of the plaintiff's invention claimed in reissue claims 1, 2 and 3 of the reissue patent and appropriate the substance thereof.

"The defendants have conceded, by statements in their trial brief and by their failure to introduce evidence with respect to the reissue claim 3, that the reissue claim 3 is operative and infringed.

"The reissue claim 3 is not anticipated by the answer patents and par-

ticularly by Barnes 1st patent No. 2,621,797; Spencer patent No. 2,-573,996; Daniels patent No. 2,334,-388, and the British patent No. 301,-345 upon which defendants rely, as the 'principle of resiliency' set forth in the reissue claim 3, which is acknowledged by defendants as constituting the 'spark' or 'essence' or 'inventive difference' of plaintiff's invention, is not found in any of these answer patents.

"The 'principle of resiliency' as embodied in the reissue claim 3, which the defendants concede is the 'spark' or 'essence' or 'inventive difference' of plaintiff's invention does not amount to new matter as the same 'principle of resiliency' is clearly disclosed in the original Nickerson specification as well as in the original claims 1 and 2.

"The reissue claim 3 and the original claims 1 and 2 are identical in substance.

"The reissue claims 1 and 2 are operative despite defendants' contention to the contrary, and in assailing this operativeness, defendants have a very heavy burden of proof which they have not sustained by their ex parte tests."

With regard to the above findings, it does not appear that defendants acknowledge that plaintiff's principle of resiliency is the spark, or essence, or inventive difference of appellee's invention over the prior art. They declare that they have never admitted that appellee's "principle of resiliency," which term, they say, was coined during the trial of the case, is the "inventive difference" of plaintiff's patent over the prior art. Appellants also deny that the reissue claim 3 is operative and infringed.

At the outset it should be remarked that appellee's patent is a paper patent; that no side walls were ever made in accordance with it; that the only attempt by appellee to make side walls following the teaching of his patent was a failure; and that appellants, in following Barnes' patent, or on their own, with the ex-

penditure of much time and money, had successfully made and sold, up to the time of the trial, more than 3,700,000 of their side walls.

We proceed, first, to discuss the claims that appellants appropriated appellee's "principle of resiliency" which he contends is the spark, essence, and inventive difference of his invention over the prior art. This "principle of resiliency" is so repeatedly emphasized in the arguments of appellee's counsel, as well as in the findings of fact of the district court, that we consider it of the first importance to ascertain whether it is the spark, essence, and inventive difference, which characterizes appellee's patent over the prior art, and whether appellants appropriated and infringed it; and because of the long history of the claims in the Patent Office, the complexity of the language used, and, what the appellee contends to be the principal and crucial issue of the case, we are obliged to follow the many windings of the controversy at considerable length.

The case presents a remarkable display of confusion of language, of repetition of claims in differing phraseology, and of chameleon-like nomenclature, under which the same object or process appears, disappears, and reappears in the guise of varied terminology. It is a controversy in which it is always to be remembered that patent rights, or their infringement, are matters of substance, and not solely matters of words; and that there is no magic in a name, or in the mere language in which a claim is expressed.

Barnes' original patent, 2,621,979, under which defendants-appellants, Bearfoot Companies, (herein called "Bearfoot"), were licensed, was filed May 23, 1950, and issued December 16, 1952. In this patent, Barnes claimed a rubber side wall, "comprising an annular body, disposed in confronting relation with respect to the outer side wall of said tire casing, *said annular body having its inner peripheral portion turned inwardly to form a skirt for engagement and support intermediate said tire casing and said rim*, and resilient means carried on

the confronting face of said [side wall] for urging the latter into abutting and embracing relation with respect to said side wall of said tire casing." (Emphasis supplied)

The resilient means, mentioned in the above claim of Barnes, were stated, in the specifications, to be set forth and illustrated in the patent drawings, as flat springs shaped to conform to the smooth inner face of the said wall. These springs, according to the testimony, could be of rubber or metal.

Bearfoot, the licensee of Barnes, never attempted to make the side wall with rubber or metal resilient springs, because, as was stated on the trial, it regarded the side wall itself, which was made of elastic material and which was turned "inwardly,"—in the language of the claim—as having adequate resiliency to cling to the tire, without the addition of springs.

A year after the Barnes patent (licensed to Bearfoot) was filed, plaintiff-appellee Nickerson filed his original patent on April 24, 1951, which was issued three and a half years later, on October 12, 1954. Between the time of the filing and the time of the granting of the patent, Nickerson had heavy sledding in the Patent Office. Before Nickerson's original patent, with two claims, was finally granted, all of the nine original claims were rejected; numerous additional claims were subsequently filed; these additional claims were rejected; they were amended; and rejected again; and finally two new claims, designated as claims 12 and 13, were allowed as claims 1 and 2 of the patent. These two claims are as follows:

"1. In combination, a wheel, a rim including annular flanges, a tire mounted on said rim, a unitary ornamental annular side wall provided with a central circular opening, the outer peripheral edge of said side wall being of reduced thickness, there being an annular cutout in said side wall adjacent the inner edge thereof defining a lip for insertion between said tire and one of said rim flanges, said side wall having an intermediate flat portion between the lip and outer portion, said lip including a flat portion and an arcuate portion, said cutout defining a hump providing a vertex for the outer portion of the side wall, said side wall having its greatest thickness at said hump, said side wall being biased outwardly and frictionally embracing the tire when the tire is inflated.

"2. The structure as recited in claim 1, wherein said annular side wall is fabricated of a single piece of flexible material, and wherein said side wall is removable from the tire which it embraces."

The File Wrapper of the original Nickerson patent, 2,691,550 is pertinent. A patent should be construed in the light of its history in the Patent Office. There, it appears that the original application of Nickerson embodied nine claims. All of these claims were, as above mentioned, rejected by the Patent Office on February 8, 1952, as being drawn to an inoperative structure. Claims 3 to 9 inclusive were also rejected (even if operative) as being unpatentable in view of prior art.

Since the File Wrapper may be used to interpret the language of a patent, in our view it is relevant to note the original claims made by Nickerson, which were rejected by the Patent Office, and of these, Claims 1, 2, 3, 4, and 7 are set forth in the margin.[1]

It is important to note that Nickerson's original claims 3 and 4, which were

---

1. The above-mentioned original claims made by Nickerson are as follows:

"1. In combination, a vehicle wheel rim provided with annular flanges, a tire casing mounted on said rim, and an annular side wall arranged contiguous to the outer surface of said tire casing and having a lip positioned between said casing and the adjacent flange.

"2. In combination, a vehicle wheel rim provided with annular flanges, a tire casing mounted on said rim, and an annular side wall arranged contiguous to the outer surface of said tire

rejected by the Patent Office, described a side wall "*curved inwardly*."

In view of subsequent claims and to clarify an obfuscated area of the case, it is to be here emphasized that Barnes in his original patent had claimed a side wall "having the inner peripheral portion *turned inwardly* to form a skirt for engagement and support intermediate said tire casing and said rim." We do not understand that Nickerson bases his claim to a patent and infringement thereof by Bearfoot, on the ground that Bearfoot infringed by making a side wall "curved inwardly." Barnes, who licensed Bearfoot, as above remarked, had secured a patent claiming a side wall having its inner peripheral portion "turned inwardly." Nickerson in his original claims 3 and 4, in claiming a side wall "curved inwardly," would be copying Barnes, whose patented side wall had its inner peripheral portion "turned inwardly."

After all the original claims were rejected, Nickerson, on July 14, 1952, petitioned the Patent Office to amend his application, as follows:

"In response to the Office Action dated February 8, 1952, please amend the above entitled application as follows:

"The side wall of the present invention is constructed so that it has a certain amount of stiffness whereby when the tire is inflated the tire causes the side wall attachment to move to the position shown in Figure 2. With the side wall moved out to the position shown in Figure 2, the side wall snugly hugs the tire. Normally the side wall of the present invention has the shape shown in Figure 5, and after it is installed in place and the tire initially expanded by the innertube therein, the side wall 17 moves to the position shown in Figure 4. Finally, with the tube and tire fully expanded or inflated, the side wall 17 occupies the position shown in Figure 2. The side wall of the present invention is made of a rubber-like plastic and is of a sufficient stiffness or resiliency so that it will hug the tire at all times.

\* \* \* \* \* \*

"As the result of a careful review of the entire record of this case, it

casing and having a lip positioned between said casing and the adjacent flange, said side wall being white and being fabricated of a flexible material.

"3. As a new article of manufacture, an ornamental annular side wall fabricated of a single piece of flexible material and provided with a central circular opening, *the outer peripheral edge of said side wall* being of reduced thickness *and curved inwardly*, there being an annular cutout arranged around the inner peripheral edge of said side wall to define a lip for insertion between the rim flange and tire casing.

"4. In combination, a wheel rim including a web and a pair of annular flanges projecting from said web, a pneumatic tire casing mounted on said rim, a tube arranged in said casing, an ornamental annular side wall fabricated of a single piece of flexible material and provided with a central circular opening, the outer peripheral edge of said side wall being of reduced thickness and *curved inwardly*, there being an annular cutout arranged around the inner peripheral edge of said side wall to define a lip for insertion between the tire casing and rim flange.

\* \* \* \* \* \*

"7. In combination, a wheel rim including a web and a pair of annular flanges projecting from said web, a pneumatic tire casing mounted on said rim, a tube arranged in said casing, an ornamental annular side wall fabricated of a single piece of flexible material and provided with a central circular opening, the outer peripheral edge of said side wall being of reduced thickness and *curved inwardly*, there being an annular cutout arranged around the inner peripheral edge of said side wall to define a lip for insertion between the tire casing and rim flange, said lip serving as a means for transferring the forces caused by the action of the tire bead and the opposite and equal reaction set up by the rim flange, said lip serving to resist any forces tending to move the lip laterally from its proper position, the outer portion of said side wall embracing and fitting snugly the adjacent portion of the tire casing." (Emphasis supplied.)

has been deemed advisable to amend the specification so as to further amplify the construction and use of the side wall attachment of the present invention. The specification, as now amended, quite clearly defines applicant's invention and is solely within the confines of the original disclosure and description."

With reference to the claims, Nickerson stated in the amendment, the following:

"With reference to the claims, it is submitted that prior to the instant invention it was not possible to provide an ornamental white side wall for attachment to a vehicle tire. *The section 18 is flat and is securely anchored along its inner portion so that the section 18 will only be able to take the shape of the outer surface of the tire casing.* The outer section 19 embraces and fits perfectly that adjacent portion of the tire casing for which it is shaped and designed. Also the base of the lip 21 on the outside surface serves as a guide and the side wall is flat between the lip and the outer portion, the outer portion being curved inwardly."

In the foregoing amendment, Nickerson set forth why, in his opinion, claims 4 to 9 inclusive of the original application defined invention, as follows: that when the tire was inflated, it caused the side wall to move outwardly, as shown in Figure 2 of the patent drawing; that when the side wall moved outwardly, as the tire was inflated, it would snugly hug the tire; that, normally, the side wall had an almost perpendicular shape curving inwardly toward the end of the side wall in the direction where the tire would be; that, after the side wall was installed, and the tire initially expanded, the side wall would be pressed outwardly; and when the tire was fully expanded, the side wall would hug the tire at all times. The foregoing amendment, Nickerson added therein, "quite clearly defines applicant's invention, and is solely within the confines of the original disclosure and description." The above corresponds, in different language, to Nickerson's claims now before the court.

After the filing of this amended application, the Patent Office again rejected claims 4 to 9 inclusive, as being unpatentable over the prior art, specified as the Spencer and Daniel patents.

In response to a further amendment, filed by Nickerson on December 29, 1952, the Patent Office again rejected claims 6 to 9 inclusive, on August 19, 1953.[2]

Subsequent to the foregoing rejection, the File Wrapper discloses the following statement by Nickerson:

"As a result of a careful review of the entire record of this case, and as the result of an interview courteously granted by the Examiner in charge of this application on March 23, 1954, it has been deemed ad-

2. The rejection of the Patent Office filed August 19, 1953, states:
 "Claims 6 to 9, inclusive, are also rejected, if believed to be a valid combination, as being unpatentable over Spencer in view of Daniel and for the reasons fully set forth in Office action of December 16, 1952.
 "Claims 6 to 9 inclusive, are further rejected on Spencer in view of Barnes. To make the ornamental side wall of Spencer in a single piece, as taught by Barnes, would not involve invention. The provision of an annular cut-out and the specific shape of the lip do not involve invention since these are merely matters of design.
 \* \* \* \* \* \*

 "Figure 2 of Spencer shows the wheel rim 11, pneumatic tire 16, tube 17, and side wall 5. While this side wall is made up of three sections, there would be no invention in making it in a single piece especially in view of the teaching of Barnes. In an old combination rejection it is not necessary to show all the details of any element of the combination such as the lip and cut-out for example. However, the several features claimed are shown by the references. Fig. 3 of Spencer shows the lip at 13 and Fig. 3 of Barnes shows the tapered portion which bears against the side wall of the tire. Spencer also shows the lip between the rim flange and the tire so that when the tire is inflated the lip and side wall will be held in place."

visable to cancel all claims in this case, and in lieu thereof add new claims 12 and 13 to the record of this case.

"At the above named interview, the Examiner agreed to allow new claims 12 and 13, since the features recited in these claims are not shown nor suggested by the references made of record, whether taken alone or together."

These new claims, 12 and 13, submitted on March 23, 1954, were allowed as claims 1 and 2—and the only claims—of the original patent, issued on October 12, 1954, on the ground that "the features recited in these new claims were not shown or suggested by the references made of record, whether taken alone or together."

The features in claims 12 and 13, which were allowed as claims 1 and 2 of the patent originally issued, were allowed because they were not shown in the prior Spencer, Daniels and Barnes patents. These features, which were not shown in the prior patents, and because of which the Nickerson original patent was allowed, are, it appears to be agreed, the following:

An annular cut-out, defining a hump where the greatest thickness occurs, together with an intermediate flat portion between the lip and the outer portion of the side wall.

In other words the features upon which the patent was granted were the cut-out, hump, and the flat portion.

This Nickerson patent with its two claims [3] was finally issued as heretofore stated on October 12, 1954. Claim 1 of the patent finally issued, after describing the annular cut-out, the hump, and the intermediate flat portion, concluded with the phrase, "said side wall being biased outwardly and frictionally embracing the tire when the tire is inflated."

There would be no invention in a side wall "being biased outwardly," inasmuch as Barnes had already described his side wall as having "its inner peripheral portion turned inwardly for engagement and support intermediate said tire casing and said rim."

In the beginning of July, 1954, Barnes brought his original aluminum mold for the making of said walls to Bearfoot. The mold was in two parts. The combination of the two aluminum parts, joined together, produced a side wall; and a specimen side wall produced out of this mold had substantially the same appearance and cross section as the accused Bearfoot side wall shown on one of the charts introduced into evidence as an exhibit.

Furthermore, examination of the Barnes mold disclosed that it was designed to make a side wall having its outer edge tipped or inclined towards the tire, as compared with the lip of the side wall. There was no indication, in the Barnes molds, that any metal parts or other resilient means were to be inserted in the molds, and there was no provision for inserting such resilient springs. Furthermore, the indication was to the contrary. It would have been impossible to maintain any springs, at any particular place in the mold, while manufacturing the side wall, or to prevent the flow of rubber from displacing them, if such springs had, in any way, been used. Bearfoot never attempted to use springs in making the Barnes side wall, or any of the side walls mentioned, or introduced into evidence, in the case. As stated by Bearfoot, the rubber of the side walls is itself sufficiently resilient "for urging the [side wall] into abutting and embracing relation with respect to said outer side wall of said tire casing," in the language of the Barnes' patent.

On October 1, 1956, almost two years after Bearfoot began manufacturing the side walls in question, Nickerson filed his application for a reissue patent. In his oath accompanying his application for the reissue patent, Nickerson stated that he believed "his original patent to be in-

3. See pages 862, 863.

valid in that it claimed less than he was entitled to; that claim 1 contains the following phrases that were included in the claim, not by necessity, but negligent drafting, said phrases being: provided with a central circular opening, the outer peripheral edge of said side wall being of reduced thickness, said side wall having an intermediate flat portion between the lip and outer portion, said lip including a flat portion and an arcuate portion, said cutout defining a hump providing a vertex for the outer portion of the side wall, said wall having its greatest thickness at the hump; * * * that he verily believes himself to be entitled to the following claims:

"Claim 3, An elastic detachable side wall for pneumatic tires comprising, in combination, an annular body portion, a recessed inner portion connected to inside edge of body portion and adapted to fit between rim flange and adjacent portion of tire, said body portion and said inner portion acting in conjunction as an elastic unit are subject to a shearing force when the tube is inflated immediately endowing body portion with potential energy of distortion exerting a force equal to and in an opposite direction to shearing force causing said body portion to snugly engage tire.

"Claim 4, An elastic detachable side wall for pneumatic tires comprising, in combination, a means for utilitarianly ornamentally covering side wall portion of pneumatic tire, and a means for anchoring said covering means along its inside edge, said covering means and said anchoring means acting in conjunction as an elastic unit are subject to a shearing force when the tube is inflated immediately endowing cover-

ing means with potential energy of distortion exerting a force equal to and in an opposite direction to shearing force causing said covering means to snugly engage tire."

On November 5, 1956, the Patent Office rejected both claim 3 and claim 4. In the rejection the Patent Office stated that these claims call for an elastic unit subject to "a shearing force," but do not state where the shearing force takes place. The Patent Office further rejected both claims on the ground of new matter; that there was no mention in the specification of the original application of any shearing force; that claims 3 and 4 were both broad claims, which corresponded to claim 3 in the original application, and that the functional statements did not define any structural differences to distinguish these claims from claim 3 of the original application; that claim 3 of the original application was cancelled by an amendment, and therefore constituted a bar to claims 3 and 4 in the reissue application, "because it is well settled that the deliberate withdrawal of a claim in order to obtain a patent does [not] involve inadvertence or error and is not a mistake of the kind which will justify the reissue of the patent including the matter previously withdrawn." Claims 3 and 4 were further rejected as being unpatentable over the Spencer & Barnes patents.[4]

In this vast flood of words in which the Patent Office repeatedly found, year after year, that different phrasing of alleged new claims merely represented the same thing as prior claims that had already been rejected, it may be helpful to remember one essential fact. Many of Nickerson's claims and amended claims, in the proceedings to secure the reissue patent, were rejected on the ground that they corresponded to claims 3 and 4 in

4. The Patent Office declared: "The Claims [3 and 4 of the reissue] broadly recite a side wall for a vehicle having an annular body portion and a recessed inner portion adapted to fit between rim flange and the adjacent portion of the tire. Spencer and Barnes both show detachable side wall for pneumatic tires comprising an annular body portion devised to overlie the side wall of the tire and an inner lip portion devised to rest between the tire retaining flange of the rim and the tire bead portion. There would be no invention involved to provide a recess or cutout in the inner portion of the Barnes or Spencer side wall as claimed."

the original application, both of which had been rejected, cancelled, and deliberately withdrawn, and would therefore not justify a reissue patent including matter previously withdrawn. These claims, 3 and 4 of Nickerson's original application, were those claiming a side wall "curved inwardly." Nickerson's claims 3 and 4 in his application for the reissue used different terms than a side wall "curved inwardly," to describe what the Patent Office found had already been described in the rejected claims of Nickerson's original application, although he phrased the matter in these words:

"An elastic * * * side wall * * * comprising, in combination, an annular body portion, a recessed inner portion connected to inside edge of body portion, and adapted to fit between rim flange, and adjacent portion of tire, said body portion and said inner portion acting in conjunction as an elastic unit are subject to a shearing force, when the tube is inflated immediately endowing body portion with potential energy by distortion exerting a force equal to and in an opposite direction to shearing force * * * causing said body portion to snugly engage tire."

While this claim was rejected by the Patent Office as being indefinite, it was also rejected because it corresponded in scope to previously cancelled claim 3 in the original application, except for functional statement recited therein, and because such functional statement "does not define any structural differences to distinguish these claims from the cancelled claim 3 of applicant's original invention." We conclude, then, that claims 3 and 4 of the reissue, with their terminology of "shearing force," "endowing body portion with potential energy of distortion," "and exerting a force equal to and in an opposite direction forcing body portion to snugly engage tire," mean no more than that the elastic, resilient material, of which the side wall was made, was "curved inwardly," and that when the tire, against which the side wall was curved, was inflated, it would press against the side wall.

In reply to the rejection of claims 3 and 4 of the reissue application, Nickerson amended his application on February 11, 1957, to insert the following claims:

"5. A unitary ornamental side wall adapted to be detachably mounted on a pneumatic tire mounted on a vehicle wheel having a rim and rim flanges, comprising an annular body portion *adapted to be inoperatively positioned axially inwardly of its operating position*, a recessed lip portion connected to the inside edge of the body portion and adapted to fit between the rim flange and adjacent portion of the tire, the body portion *and the lip portion coact to cause the body portion to engage the inflated tire*, the side wall is constructed of a flexible material.

"6. A unitary ornamental side wall adapted to be detachably mounted on a pneumatic tire mounted on a vehicle wheel having a rim and rim flanges, comprising, an annular body portion *adapted to be inoperatively positioned axially inwardly of its operating position*, an anchoring means connected to the inside edge of the body portion and adapted to anchor the inside edge of the body portion in a position at the junction of the outside surface of the side wall of the tire casing and the rim flange, *the body portion and the anchoring means coact to cause the body portion to engage the inflated tire*, the side wall is constructed of a flexible material.

"7. A unitary ornamental side wall adapted to be detachably mounted on a pneumatic tire mounted on a vehicle wheel having a rim and radial rim flanges, comprising, an annular body portion, an inner portion connected to the inside edge of the body portion and having a recessed portion and a lip portion, the recessed portion is adapted to rest on the axially arcuate portion of the radial

rim flange and the lip portion is adapted to rest between the radial rim flange and adjacent tire portion, *the inner edge of the lip portion terminates at a point radially within the limits of the radial rim flange, the inner portion and the body portion coact to cause the body portion to engage the inflated tire,* the side wall is constructed of a single piece of flexible material.

"8. An ornamental side wall for attachment between a vehicle tire casing and rim, comprising, an annular body portion of flexible material, the outer peripheral edge of *said annular body portion being inwardly curved,* the inner portion of said body portion being recessed and defining a lip for insertion between said tire casing and rim, said lip being anchored between said inflated tire casing and rim, and said recessed portion of said annular body portion providing a hump which is maintained in firm contact with the mating portion of said rim when said lip is anchored between said inflated tire and said rim, whereby said body portion is caused to snugly embrace the outer surface of said inflated tire casing." (Emphasis supplied.)

To this amendment, Nickerson added the following under the term "Remarks":

"Regarding the Examiner's rejection stating that the recess is a matter of design, and to say that the lip in my invention would function in the same manner as Barnes', is a misunderstanding of both the invention and the prior art.

"*By cross-sectionally shaping the side wall as I have,* by dividing it into sections at the locations set forth in the claims, by providing a recessed lip as I have and not a single continuous curved section, are the reasons why my side wall can accomplish what heretofore was not possible.

"To be more specific, in the Spencer patent the main body of the side wall is, in cross-section, designed in one piece and there is no distinctively set forth two parts (sic), namely a body portion and a recessed lip portion as I have. Rather the Spencer side wall is described as a reversedly curved or sinuous in cross-section, as found in line 61 of column 1, with the concave portion fitting between the clincher of the rim and the tire, lines 63 and 64 of column 1. This is a very definite structural difference between Spencer's side wall and mine, only one of the reasons why, if Spencer's side wall were constructed of a flexible material instead of rigid, it would not function as mine.

\* \* \* \* \* \*

"Also the Barnes' side wall is described in cross-section as arcuately shaped to conform to the outside wall of the tire casing, as found in lines 1 to 5, column 2. The main body is defined as one continuous flow through the radial flange to the point where it connects with the skirt. In my side wall the body portion ends where it connects with the recessed portion and there is quite a difference structurally and operatively. Also, because my lip terminates at a point where Barnes' body portion joins his skirt portion, the method for anchoring the side wall is different."

On March 13, 1957, the Patent Office rejected all of these claims in the following language:

"Claims 5, 6, 7 and 8 are rejected on the ground that failure to obtain these claims in the original application was not due to inadvertence or error, for the reasons as stated in the last office action. These claims are similar in scope to cancelled claim 3 of the original application, and, as stated the deliberate withdrawal of a claim in order to obtain a patent does not involve inadvert-

ence or error which will justify the reissue of a patent."

The Patent Office, therefore, considered the phrase in the rejected claims, "an annular body portion adapted to be inoperatively positioned axially inwardly of its operating position," and which Nickerson stated he had shaped "cross-sectionally," to be nothing more than phraseology representing the scope of cancelled claim 3 of the original application, which stated that the side wall was "curved inwardly."

The above is especially pertinent since, on the hearing, the principal expert witness introduced on behalf of Nickerson, Dr. Paul L. Hoover, testified: "[That] was the big contribution of Nickerson to this art, the fact that you could, by designing and proportioning your sidewall member, make it hug the tire by having this distortion present, molding it so that in its unstressed condition it was different from the stressed condition, and the inherent resilience and internal stress of the element necessarily would hold it in place without the necessity of springs or other auxiliary means. That was Nickerson's big contribution."

If this particular phase of the case were before us for consideration without the guidance of the above-mentioned rejection of the Patent Office, it might well be difficult to determine whether claims 5 to 8 inclusive of the reissue were similar in scope to cancelled claim 3 of the original application. Certainly, Nickerson advanced an emphatic claim that his invention consisted of his shaping the side wall cross-sectionally, to make "an annular body portion adapted to be inoperatively positioned axially inwardly of its operating position;" and Dr. Hoover's testimony strongly supported this claim. But the claim was clearly rejected as similar in scope to cancelled claim 3 of the original application, which had been thereafter withdrawn, and as the Examiner stated: "The deliberate withdrawal of a claim in order to obtain a patent does not involve inadvertence or error which will justify reissue of a patent." Thus, Dr. Hoover's testimony

on the trial appears to have been in support of the patentability of a claim that (in slightly different phrasing), had already been rejected.

Here, let us consider rejected claim 5, which was subsequently cancelled by appellee, with claim 3 of the reissue, as far as the phraseology relating to the side wall goes. Rejected claim 5 related to a side wall "comprising an annular body portion adapted to be inoperatively positioned axially inwardly of its operating position * * *, the body portion and the lip portion coact to cause the body portion to engage the inflated tire." Compare the foregoing phraseology to that of claim 3 of the reissue as finally allowed, of a side wall "having an annular body portion * * * the body portion having an unstressed cross-sectional shape defining a plane that is axially inwardly of the operating position of said body portion, * * * the body portion and lip portion coacting to cause the side wall to engage the inflated tire. * * * *" All of this phraseology, while, in our view, of needless complexity, does not require the assistance of expert witnesses to enable the court to understand it; and we find that the foregoing phraseology of claim 3 does not convert the phraseology of rejected claim 5 into anything having patentable quality.

 Dr. Hoover is a recognized expert in patent cases, and this court, on other occasions in the past, has found considerable assistance in the views he has expressed in various cases. However, his testimony going to the patentability of Nickerson's claim was a conclusion, the ascertainment of which was the obligation of the court; and the use of expert testimony in a patent case is only to help the court understand what the specifications say. When the expert witness has done this, his function is fulfilled. As said by Judge Learned Hand in Kohn v. Eimer, 265 F. 900, 902 (C.C.A. 2):

"At the outset the appellant challenges our right to examine the prior art patents at all, because the appel-

lee called no expert at the trial to explain them. * * * We have not the slightest wish to minimize the vital importance of expert testimony in patent suits, or to suggest that we are not absolutely dependent upon it within its proper scope; but that scope is often altogether misapprehended, as the appellant has misapprehended it here. Specifications are written to those skilled in the art, among whom judges are not. It therefore becomes necessary, when the terminology of the art is not comprehensible to a lay person, that so much of it as is used in the specifications should be translated into colloquial language; in short, that the judge should understand what the specifications say. This is

the only permissible use of expert testimony which we recognize. When the judge has understood the specifications, he cannot avoid the responsibility of deciding himself all questions of infringement and anticipation, and the testimony of experts upon these issues is inevitably a burdensome impertinence."

In this connection, we should observe, however, that the testimony of Dr. Hoover, which has often in the past proved of help, is never, for this court, "a burdensome impertinence."

After the rejection of claims 5, 6, 7, and 8, the flood of phraseology continued in Nickerson's amendment of June 10, 1957, in which he asked the Patent Office to cancel these claims, and insert claims 9, 10, 11, 12, and 13 in lieu thereof.[5]

The claims Nickerson asked to insert in lieu of the cancelled claims 5, 6, 7 and 8 were as follows:

"9. An ornamental side wall for attachment between a vehicle tire casing, and rim comprising, an annular body portion of flexible material, the outer peripheral edge of said annular body portion being inwardly curved, the inner portion of said body portion being recessed and defining a lip for insertion between said tire casing and rim, said lip provides a means for anchoring said side wall between said inflated tire casing and rim, and said recessed portion of said annular body portion providing a hump which is maintained in firm contact with the mating portion of said rim when said lip is anchored between said inflated [tire casing] and said rim whereby said body portion is caused to snugly embrace the outer surface of said inflated tire casing.

"10. A unitary ornamental side wall adapted to be detachably mounted on a pneumatic tire mounted on a vehicle wheel having a rim including rim flanges, comprising, an annular body portion having a central circular opening, * * * the outer peripheral edge of said body portion being curved inwardly, an arcuately recessed lip portion connected to the inside edge of the body portion and adapted to fit between the rim flange and the adjacent portion of the tire, the body portion and the recessed lip portion coacting to cause the body portion to engage the inflated tire, the side wall is constructed of a single piece of elastic material

"11. A unitary ornamental side wall adapted to be detachably mounted on a pneumatic tire mounted on a vehicle wheel having a rim including rim flanges, comprising, an annular body portion in cross-section having an outer peripheral edge of reduced thickness and curved inwardly, * * * an arcuately recessed lip portion connected to the inside edge of the body portion and adapted to fit between the rim flange and adjacent portion of the tire, the body portion and the recessed lip portion coact to cause the body portion to engage the inflated tire, the side wall is constructed of a single piece of elastic material.

"12. A unitary ornamental side wall adapted to be detachably mounted on a pneumatic tire mounted on a vehicle wheel having a rim including rim flanges, comprising, an annular body portion having a central circular opening, said body portion in cross-section having an outer peripheral edge of reduced thickness and curved inwardly, * * * an arcuately recessed lip portion connected to the inside edge of the body portion and adapted to fit between the rim flange and adjacent portion of the tire, the body portion and the recessed lip portion coact to cause the body portion to engage the inflated tire, the side wall is constructed of a single piece of elastic material.

"13. A side wall adapted to be detachably mounted on a pneumatic tire mounted on a vehicle wheel having a rim including rim flanges, comprising, * * * an inner portion connected to

On July 17, 1957, the Patent Office rejected claims 9, 10, 11, 12 and 13 for the same reasons given in rejecting claims 5, 6, 7 and 8, and expressly found that the newly rejected claims defined a structure identical to rejected claim 3 of the original application, describing a side wall "curved inwardly." [6]

On September 26, 1957, Nickerson renumbered claims 8 to 12 inclusive, so that

> the inside edge of the body portion, said inner portion having an arcuate recess portion and a lip portion, the recess portion is adapted to rest on the axially arcuate portion of the rim flange and the lip portion is adapted to rest between the rim flange and adjacent tire portion, the inner edge of the lip portion terminates at a point radially within the limits of the rim flange, the inner portion and the body portion coacting to cause the body portion to engage the inflated tire, the side wall is constructed of a single piece of elastic material."

6. In rejecting claims 9 to 13, inclusive, the Patent Office stated:

> "To the extent that these claims define structure they appear to be identical to claim 3 which was cancelled from the original application. This recited structure consists of an ornamental annular side wall of a single piece of flexible material the outer edge being of reduced thickness and curved inwardly and an annular cut out arranged around the inner peripheral edge of the side wall to define a lip for insertion between the rim flange and tire casing. This structure is found in both cancelled claim 3 in the original case and claims 9–13 in the instant case. The latter group of claims contain functional limitations relating to the contact between the side wall and tire, such as appears in claims 9 and 10 or to the initial placement of the side wall, as shown in Figure 4, and recited in claims 11–13. Such limitations relate to nothing more than the inherent operation of applicants structure and are therefore of no different scope than claim 3 which was cancelled from the original case.
>
> "Claims 1 and 2 stand allowed.
>
> "As no new references have been added and an issue appears to have been reached this rejection is made final.
>
> "FINAL REJECTION."

7. Nickerson's amendment of claims stated:

> "In claim 10, substitute for the phrase —said body portion in cross-section is

they would appear as claims 9 to 13 inclusive. He then cancelled claim 9 and amended claims 10, 11, 12 and 13 by certain substitution of phrasing.[7]

Thereafter, claims 10 to 13 inclusive were finally rejected by the Examiner "on the ground that failure to obtain these claims in the original application was not due to inadvertence or error. These claims are held to be similar in

> adapted to be inoperatively positioned axially inwardly of its operating position—with the phrase—said body portion having a cross-sectional shape defining a plane that is axially inwardly of the distorted operational position of the body portion.
>
> "In claims 11 and 12, substitute for the phrase—said body portion is adapted to be inoperatively positioned axially inwardly of its operating position—with the phrase—said body portion having a cross-sectional shape defining a plane that is axially inwardly of the distorted operational position of the body portion.
>
> "In claim 13, substitute for the phrase —an annular body portion in cross-section adapted to be inoperatively positioned axially inwardly of its operating position—with the phrase—an annular body portion having a cross-sectional shape defining a plane that is axially inwardly of the distorted operational position of said body portion."

Under the heading of "Remarks" Nickerson added:

> "The phrase, in its improved form and generally stated: 'said body portion having a cross-sectional shape defining a plane that is axially inwardly of the distorted operational position,' is the very essence of the invention because it gives patentable life to the claims. This spark of patentable life is completely missing from cancelled claim 3. In short, the remaining claims state that I have invented a detachable side wall of a single piece of elastic material, having a cross-sectional shape, that by this shape alone, and with no auxiliary means such as ribs (Barnes), or a rigid construction (Spencer), will snugly engage the inflated tire. This is because the cross-sectional shape of the side wall places the body portion on a plane that is axially inwardly of its operating position, which, when put into operation, produces a state of distortion in the body portion. The body portion being of an elastic material will strive to correct this distortion, and in doing

scope to cancelled claim 3 in the original application. It is well settled that the deliberate withdrawal of a claim in order to obtain a patent does not involve inadvertence or error and is not a mistake of the kind which will justify the reissue of the patent including the matter previously withdrawn."

In this rejection, it was determined that the new phraseology, "said body having a cross-sectional shape defining a plane that is axially inwardly of the distorted operational position of the body portion" was equivalent, in scope, to the phraseology "an annular body portion adapted to be inoperatively positioned axially inwardly of its operating position," and that the phraseology in both of the above instances was equivalent in scope to cancelled claim 3 of the original application.

With regard to the phraseology used, we are of the view that the above rejection is of special importance in this case because of the claim made by Nickerson that: "The phrase, in its improved form and generally stated: 'said body portion having a cross-sectional shape defining a plane that is axially inwardly of the distorted operational position,' is the very essence of the invention because it gives patentable life to the claims. This spark of patentable life is completely missing from cancelled claim 3."

This alleged "essence" of the invention was not recorded by Nickerson until his final amendment of his reissue patent of September 26, 1957. A French patent, published April 12, 1954, showed, in cross section, a side wall mounted with its lip between the rim flange and the adjacent portion of the tire; and the French pat-

ent stated that the rubber side wall "can advantageously have, when at rest, the curve shown in dotted lines on the drawing," so that, when mounted, its outer edge "will be pressed with a certain amount of elastic pressure against the side of the tire." The curve mentioned was shown by the dotted lines as an inwardly curved position. The drawings of the French patent showed that the side wall was axially inwardly of the distorted operational position. The "essence" of the invention, which was first claimed by Nickerson in 1957, was revealed in the French patent published in 1954. It is to be noted that the language used by Nickerson in his final amendment of September 26, 1957, is substantially similar to that used in a patent, 2,737,422, issued to Barnes on March 6, 1956, in which the specifications stated: "Provision of the desired resiliency and compressive forces within the trim member * * * is insured in this particular embodiment of the invention by making the outer peripheral edge of the annular body * * * generally define a plane positioned axially inwardly of the entire skirt portion * * * of the trim member and in all events to have such edge of the trim member define a plane axially inwardly of the trim member with relation to the connection between the annular body * * * and the skirt."

After the rejection of claims 10 to 13 inclusive by the Examiner, the rejection was affirmed by the Board of Appeals. The ground on which the Examiner rejected these claims, as appears above, was that the failure to obtain these claims in the original application was not

so will exert a force to snugly engage the inflated tire.

"The body portion doesn't necessarily have to be biased inwardly when not in operation, for that matter it can be biased outwardly when inoperative as long as it must be distorted axially outwardly from its original position by the inflated tire.

"In referring to the allowed claim 1 of the issued patent, you will notice that it includes the phrase: 'said cut-out de-

fining a hump providing a vertex for the outer portion of the side wall.' This is the qualifying phrase, the patentable difference between allowed claim 1 and all references cited. This is also true regarding cancelled claim 3. Claim 1 was allowed because it defined a shape that took advantage of the elastic properties of the material. Allowed claim 1 was good in that respect, but that particular form was a narrow way of claiming the invention."

due to inadvertence or error, and that they were similar in scope to claim 3 of the original application which had been cancelled.

The ground on which the Board of Appeals affirmed the rejection of claims 10 to 13 inclusive was somewhat different from that given by the Examiner. The Board held that claims 10 to 13 inclusive were subcombination claims, directed to the same subcombination as claim 3, which had been cancelled in the original patent proceedings, and that the cancellation of claim 3, under the circumstances, was not a correctible error.[8]

Nickerson thereafter petitioned for reconsideration, cancelling claims 11 to 13 inclusive, and amending the application by rewriting claim 10, and renumbering such rewritten claim as claim 14. On reissue, the Board held, that, because its ground of rejection of claims 10 to 13 inclusive was a new rejection and, because it had not agreed with the reasons given by the Examiner in refusing this subcombination claim, that the decision of the Examiner should be reversed, so that the case could be reopened before the Examiner "for treatment of amended claim 14." When the case came again before the Examiner, he allowed claim 14 after a minor change in phrasing; and claim 14 became the present claim 3 of the reissue patent.

Appellee claims that the Board's decision on reconsideration, was based upon the ground that the Board had previously been mistaken in thinking that Nickerson was seeking allowance of reissue claims, which were broader than the original claims. Appellee contends that when it was shown that Nickerson's reissue claim had a narrower scope than cancelled claim 3 of the original patent application, the Board granted reconsideration to reopen the case before the Examiner "for treatment of amended claim 14."

Appellants, on the other hand, contend that while claim 3 in the original application (which was rejected), was a subcombination claim relating only to the side wall itself, and that the new amended claim 14 (which was eventually allowed), was a combination claim, relating to the side wall, *and* the wheel rim having annular flanges as well as the tire casing and tube, nevertheless, this combination had already been rejected in the rejection of claim 4 of the original application, which claimed:

"4. In combination a wheel rim including a web and a pair of annular flanges projecting from said web, a pneumatic tire casing mounted on said rim, a tube arranged in said casing, an ornamental annular side wall fabricated of a single piece

8. The Board's decision sustaining the rejection of the Examiner and affirming his decision, on different grounds, was as follows:

"We have considered this case including the arguments presented by appellant and the file of the patent and find that the following are the facts. The application on which the original patent issued was filed containing claims both to the combination of wheel rim, tire and side wall, which combination is exemplified by the above quoted patent claim 1, and a claim to a subcombination directed to the side wall element per se, i.e., the same subcombination covered by above quoted application claim 10. The single claim to the subcombination was cancelled by the first amendment, leaving only combination claims. By the second amendment claims to the subcombination were reintroduced and thereafter claims to combination and

subcombination were prosecuted to final rejection. In the patent file Paper No. 10D is an amendment introduced after final rejection that cancelled all claims in the case and added two claims, namely, the present patent claims. The remarks accompanying such amendment state that the amendment was filed pursuant to an interview, at which interview the examiner agreed to allow the two combination claims.

"The preceding makes clear that the cancellation of the claims to the side wall per se was a deliberate act following final rejection and an interview at which the examiner agreed to allow the two combination claims that became the patent claims. Such a deliberate act is not a correctible error and thus we will sustain the rejection.

"The decision of the examiner is affirmed."

of flexible material and provided with a central circular opening, the outer peripheral edge of said side wall being of reduced thickness and curved inwardly, there being an annular cutout arranged around the inner peripheral edge of said side wall to define a lip for insertion between the tire casing and rim flange."

We are of the view that combination claim 14 of the reissue (claim 3 of the reissue as ultimately allowed) was a combination claim directed to the same combination as rejected claim 4 of the original application, which had been cancelled six years previously, and therefore could not be made the basis of a claim in the reissue patent.

It is of interest to note certain contentions of appellee in this regard. Nickerson, in his oath petitioning for the reissue patent says, "he believes his original patent to be invalid in that it claimed *less* than he was entitled to," and then sets forth what he did think he was entitled to. Nickerson's counsel, in their brief on appeal, state that in his reissue claim 3, Nickerson was seeking the allowance of a claim having a scope *narrower* than cancelled claim 3 of the original application. In his testimony on the trial, Nickerson said that "Claim 1 (of the original patent) was *narrow*—it specified a specific shape—and in claim 3 it was corrected. That error was corrected in stating that *any* structure that was distorted outwardly would fall within the scope of the patent." (Emphasis supplied.) In his remarks accompanying his amendment of the reissue dated September 26, 1957, Nickerson stated: "Claim 1 was allowed because it took advantage of the elastic properties of the material. Allowed claim 1 was good in that respect, but that particular form was a *narrow* way of claiming the invention." (Emphasis supplied.)

The foregoing would indicate that Nickerson, instead of narrowing his claim in the reissue application, as his counsel contend in their brief, was phrasing it in a way to broaden it. But

the record is too filled with vague verbiage on this point to draw a valid conclusion; and, in our determination, we find it unnecessary to decide whether Nickerson was claiming more or less in his reissue than in his original application.

What does concern us is whether the phraseology used by Nickerson in claim 14 of his reissue application (claim 3 as allowed) constituted a claim which, as he contends, defined his invention and which, appellee submits, appellants appropriated and infringed. This phraseology of the claim goes to the so-called "principle of resiliency," which appellee says is the essence of his invention, as described in claim 3 of the reissue:

"the body portion having an unstressed cross-sectional shape defining a plane that is axially inwardly of the operating position of said body portion."

We, then, consider, in extenso, the language of claim 3 of the reissue: "said side wall having a central circular opening and a peripheral edge of reduced thickness that is curved inwardly, the body portion having an unstressed cross-sectional shape defining a plane that is axially inwardly of the operating position of said body portion * * *, the body portion and the lip portion coact to cause the side wall to engage the inflated tire."

This phraseology is equivalent to the phraseology in the rejected amended claims 10 to 13 inclusive of the reissue— "said body portion having a cross-sectional shape defining a plane that is axially inwardly of the distorted operational position * * * the body portion and the recessed lip portion coacting to cause the body portion to engage the inflated tire;" it is likewise equivalent to the phraseology in the rejected claims 10 to 13 inclusive, before amendment—"the outer peripheral edge of said body portion being curved inwardly, an arcuately recessed lip portion connected to the inside edge of the body portion and adapted to fit between the rim flange and the adjacent portion of the tire, the body portion and the recessed lip portion co-

acting to cause the body portion to engage the inflated tire." It is likewise equivalent to the phraseology of rejected claim 5 of the reissue—"an annular body portion adapted to be inoperatively positioned axially inwardly of its operating position * * * the body portion and the lip portion coact to cause the body portion to engage the inflated tire." It is likewise equivalent to the phraseology of rejected claims 3 and 4 of the reissue —"said body portion and said inner portion acting in conjunction as an elastic unit are subject to a shearing force when the tube is inflated immediately endowing body portion with potential energy of distortion exerting a force equal to and in an opposite direction to shearing force causing said body portion to snugly engage tire." This phraseology is also equivalent to that used in rejected claim 3 of the original application: a "side wall fabricated of a single piece of flexible material * * *, the outer peripheral edge of said side wall being of reduced thickness, and curved inwardly." Furthermore, all of the above phraseology is equivalent to that contained in claim 1 of the original patent: a "side wall, * * * the outer peripheral edge of said side wall being of reduced thickness * * *, said side wall being biased outwardly and frictionally embracing the tire when the tire is inflated." It is to be emphasized that whether the Examiner was right or wrong in rejecting any of the above claims, it is not for the court to inquire. Hubbell v. United States, 179 U.S. 77, 83, 21 S.Ct. 24, 45 L.Ed. 95; and when once a claim is rejected, and cancelled or withdrawn, another claim, covering what had been rejected and withdrawn, cannot be granted. The injurious consequences to the public and to inventors and patent applicants if patentees were thus permitted to revive cancelled or rejected claims and restore them to their patents are manifest. Schriber-Schroth Co. v. Cleveland Trust Company, 311 U.S. 211, 221, 312 U.S. 654, 61 S.Ct. 235, 85 L.Ed. 132.

In addition, and more important, all of the above phraseology in both Nickerson's rejected and approved claims in the original application and the reissue, is equivalent to the language of Barnes, in his patent, antedating Nickerson: "A trim member for attachment to an automobile wheel assembly * * * said trim member being fabricated of rubber and comprising an annular body disposed in confronting relation with respect to the outer side wall of said tire casing, said annular body having its inner peripheral portion turned inwardly for engagement and support intermediate said tire casing and said rim."

All of the foregoing means, in the simplest terms, that a rubber side wall elastic and resilient in itself, and made with an inward bend, will hug the tire when the latter is inflated, since its own resistance holds it against an inflated tire.

Although Nickerson had declared in his amendment of September 26, 1957, that the phraseology " 'said body portion having a cross-sectional shape defining a plane that is axially inwardly of the distorted operational position,' is the very essence of the invention because it gives patentable life to the claims," and further declared, that "This spark of patentable life is completely missing from cancelled claim 3," it appears nowhere that the Examiner or the Board of Appeals of the Patent Office ever considered this so-called essence of Nickerson's invention patentable. Nowhere does it appear that this phraseology or any of the phraseology in the various claims, quoted or reviewed in the foregoing paragraphs, were considered by the Patent Office as embracing any patentable claims; and, although claims 1 and 2 of the original application contained the phraseology as to the side wall being biased outwardly, and claim 3 of the reissue contained complicated phraseology as to the side wall being curved inwardly, and "the body portion having an unstressed cross-sectional shape defining a plane that is axially inwardly of the operating position of said body portion," the Patent Office repeatedly rejected the claims that this and similar phraseology partook of any patentable quality, in

spite of appellee's insistence on this very point.

At no time during the many different rulings of the Examiner and the Board of Appeals, reciting reasons for granting or rejecting the numerous claims of appellee, was there any mention of anything from which it could be inferred that they considered any of the phraseology as to the shape of the side wall, being axially inwardly of the distorted operational position, or the side wall being biased outwardly, or curved inwardly, as elements partaking of patentable invention.[9]

The original patent and the reissue must have been and were, granted because of entirely different features than anything defined in the foregoing phraseology. For the claims of a patent must be interpreted with respect to cancelled or rejected claims, and an allowed claim may not be read to cover what has been eliminated from the patent. Miller v. Zaharias, D.C., 72 F.Supp. 29; aff. 7 Cir., 168 F.2d 1; cert. den. 335 U.S. 823, 69 S.Ct. 47, 93 L.Ed. 377.

As heretofore mentioned, claims 1 and 2 were granted because of the cut-out, the hump, and the flat portion set forth therein. When, in considering the question of patentability, the complicated phraseology relating to the shape of the side wall is held for naught, as we have determined it must be, claim 3 of the reissue is, in our view, a combination, directed to the same combination as rejected claim 4 of the original application.

With regard to claims 1 and 2 above mentioned, Nickerson, on cross examination, claimed that a flat surface could be a curved surface; and that he considered a surface having an arc as flat, if it was smooth. This is not persuasive in establishing that one of the features of Nickerson's side wall giving rise to invention was a specified "flat portion." As for the hump, which was relied upon by Nickerson to prevent a reverse fold-back of the side wall, Dr. Hoover, Nickerson's expert witness, testified that "we actually make the side wall thicker at the point * * * where the fold-back would normally occur." The fold-back was illustrated by cutting a hollow thin rubber ball in half and showing how one of the halves would be turned inside out, or folded back, by pressing it against a large circular shape. It is obvious that in order to keep a thin rubber side wall from folding back, it should be made of thicker rubber. That is what Dr. Hoover testified was done by Nickerson—"We reinforce it there by increasing the thickness." That does not partake of invention.

As to Nickerson's patent, a "cut-out" means, in the language of Nickerson's expert witness, Dr. Hoover, that "material is either removed or makes the appearance of being removed, and it makes the wall thinner by that cut-out." In the drawings of Nickerson's patent, the thick wedge of rubber side wall appears cut out at its lower portion, as though it were pared away by a knife, and as a result of the cut-out, the inner and lower part of the side wall becomes the lip inserted between the rim and the tire. Using the term "cut-out" as interpreted by Dr. Hoover, it is impossible to find in appellants' thin curving side wall, any cut-out, as so defined. But, for the purpose of this case, we accept appellee's contention that the accused side walls have the hump of greatest thickness, the cut-out, and the flat portion, that are found in appellee's side wall.

---

9. It is pertinent to emphasize the origin of the descriptive language claimed by appellee, on September 26, 1957, to be the essence of his invention—"*the body portion having an unstressed cross-sectional shape defining a plane that is axially inwardly of the operating position.*" This language, as heretofore mentioned, comes directly from Barnes' third patent filed December 19, 1955, and issued March 16, 1956, eighteen months before Nickerson had first, and finally, stated that his revised language was what gave "patentable life to the claims." The language in Barnes' third patent sets forth that his side wall "*as molded, generally defines a plane positioned axially inwardly* of the [side wall]."

Appellee's patent is a paper patent. No model of it was ever made. Appellee never made a side wall according to his original patent or reissue. He tried to make one but, as he said, his mold did not make a true side wall. After using molds and failing to make an operable side wall in accordance with the claims of his original patent, he gave up trying; and never attempted to make a side wall in accordance with the reissue patent.

Appellee filed his complaint September 24, 1958. In answer to appellee's complaint, appellants pleaded that appellee's patent and every claim thereof was invalid and void as directed to inoperable structures. Nearly two years elapsed after appellants' answer was filed before trial, but appellee, confronted with the claim that his side wall was inoperable, never tried to show by an actual side wall made according to his patent, that it was operable. Dr. Hoover, appellee's expert witness, was asked whether he had ever made a Nickerson side wall. His reply was "No." To the question whether he had tried to make a Nickerson side wall, his answer was: "No, not particularly. We considered having one made but I'll say we got started a little late." In view of the defense that a side wall made in accordance with Nickerson's patent was inoperable, and in view of the fact that the only time appellee ever tried to make a side wall in accordance with his patent, it was a failure and he could not make a true side wall—and neither he nor his expert witness ever tried again to make a side wall in accordance with his patent —the presumption that the patent is operable disappears.

The fact that Bearfoot may have constructed its side walls as taught by its licensor, Barnes, omitting, however, the springs, specified by Barnes for "urging the side wall into abutting and embracing relation" with respect to the tire casing, does not make it an infringer of Nickerson, whose patent omitted the springs. In rejecting claims 6 to 9 inclusive of Nickerson's original application, the Examiner referred to the Barnes patent and declared that Barnes showed the tapered portion which bore against the side wall of the tire; and in the final rejection of claims 9 to 13 inclusive, of the reissue, the Examiner mentioned the limitations Nickerson had placed in the claims relating to the contact between the side wall and the tire, or to the initial placement of the side wall, and held that such limitations related to nothing more than the inherent operation of appellee's structure and, therefore, were of no different scope than claim 3 which had been held unpatentable, and which had been withdrawn.

Rubber is not a completely unknown and mysterious substance. Children know it in numerous forms, from bouncing balls and elastic rubber bands to resilient bicycle and automobile tires. It is obvious to anyone that if a flat sheet of resilient rubber is bent out of its molded shape, it will press against the bending force and fly back to its original flat form when the pressure is released. So, it is obvious to anyone that if resilient rubber is molded in a curved form, it will likewise press against anything that pushes it out of such curved form. It would be obvious to anyone skilled in the art that a resilient rubber side wall curved inwardly and having a lip inserted between the rim flange and adjacent portion of a tire would press against the tire and, if formed in the requisite shape, would engage the tire. Whether the side wall is described as disposed in confronting relation with respect to the outer side wall of the tire casing and having its inner peripheral portion turned inwardly for engagement and support intermediate the tire casing and rim, as stated by Barnes; or whether the side wall was described as biased outwardly and frictionally embracing the tire, when the tire was inflated, as stated by Nickerson; or whether the side wall had an unstressed cross-sectional shape defining a plane that is axially inwardly of the operating position of said side wall, as was also described by Nickerson —we are of the view that not any of the phraseology defining such inward, or outward, or unstressed cross-sectional

shape, of the side wall, resulted in any patentable quality or invention. Nickerson testified that the phrase, "the body portion having an unstressed cross-sectional shape defining a plane that is axially inwardly of the operating position of said body portion," was "just a technical way of saying that any side wall that has a cross-sectional shape that has to be distorted by the inflated tire falls within the scope of the claim." What Nickerson did was to give his side wall an inward bend which an inflated tire would push against. This was old in the art. Barnes had done the same thing before Nickerson; and Bearfoot, whether it followed the Barnes' patent or not, did the same thing before Nickerson. If the inward bend of the Barnes side wall were exaggerated by Nickerson, the side wall would cling more tightly to an inflated tire; but the construction of such an exaggerated inward bend for such an objective would be obvious.

The only persons who attempted to produce before the trial court a side wall made according to Nickerson's patent were appellants, who submitted an exhibit which comprised a wheel having a Sieberling modern tire mounted thereon, together with what appellants declared was a simulated Nickerson side wall made by them from molds they constructed, and mounted between the flanges of the wheel and the Sieberling tire. Appellants also produced and submitted to the court a cross section of this simulated Nickerson side wall. Although appellee did not attempt to produce and submit a side wall or even a section thereof, his expert witness and counsel denigrate, in every way, the side wall and the section of the side wall which appellants submit they made according to Nickerson's patent. In effect, appellee's counsel charge appellants with deception in producing a Nickerson side wall and cross section which, as already observed, neither Nickerson nor Dr. Hoover attempted to produce, and which Nickerson admitted he had tried to make and failed. Counsel for appellee claimed, in fact, that appellants selected the Sieberling tire solely to show that the Nickerson side wall would not work. They also insisted that the cross section of the side wall which appellants made to illustrate Nickerson's patent was not proportional to the side wall shown in Nickerson's patent. Much of the testimony on this point, as it appears in the transcript, is largely unintelligible and where a gleam of meaning shows through, the witnesses are largely in dispute.

In any event, in this contention, one of the controlling factors of the case quietly emerges. Appellee claims that it was wrong of appellants to use a Sieberling tire to show how the Nickerson side wall worked. In this regard, appellee's expert witness testified that when Nickerson applied for a patent in 1951, the standard car tire "was a $6.00 \times 16$ high pressure tire. This Sieberling is a $14 \times 8.00$, is entirely different in proportion, it is a low pressure tire, balloon type of tire, and you will notice the bead is altogether different." In their brief, appellee's counsel say: "It is unmistakably clear that defendants selected the Sieberling tire with the pronounced lug, for the very purpose of preventing the side wall from hugging the inflated tire." It was appellants' claim that a side wall made according to Nickerson's patent would be pressed outward by an inflated tire so that the outer edge of the side wall, instead of engaging or pressing against the tire, would flare outwardly, leaving a space between the side wall and the tire; and that this result was due to the fact that the rounded tire, as it was inflated, would push against the lower flat portion of Nickerson's side wall and press the side wall away, leaving the outer edge flaring away from the tire. When the side wall made by appellants, following what they claimed was Nickerson's patent, was used on an inflated Sieberling tire and showed the outer edge of the side wall flaring away from the tire, appellee attacked the demonstration on the ground that the low pressure Sieberling tire with the pronounced lug was selected, for the very purpose of preventing the side wall from hugging

the inflated tire. However, appellants' own side wall worked perfectly with the Sieberling tire; and when the Nickerson side wall, made by appellants, was mounted on an inflated Goodrich Silvertown tire and rim without any so-called lug on the tire, the side wall gapped away from the Goodrich tire in the same way as it did from the Sieberling tire. Appellant's side walls operated perfectly on both Sieberling and Goodrich tires. It appears that appellants make the same type of side wall for each size of rim diameter. Every one of their side walls, made for a certain rim diameter, accommodates all tires of every kind, high pressure or low pressure, with or without lugs, that fit that rim. In other words, appellants' side walls operate successfully no matter what kind of tire is used. Counsel for appellee admits that a Sieberling tire, for instance, because of its pronounced lug, prevents appellee's side wall from hugging the inflated tire, or, in brief, from operating successfully on all tires.

Why do appellants' side walls actually operate successfully on all sizes and shapes of tires, and why does appellee's side wall fail to operate on all sizes and shapes of tires, as is admitted by appellee's counsel? The simple answer to these questions results in one of the controlling determinations in this case— there is no substantial identity between appellee's side wall and appellants' side wall.

In order to infringe a patent, a device or machine must not only perform the same, or substantially the same, function or accomplish the same result as the patented invention, but it must also perform the function or accomplish the result by identical, or substantially identical, or equivalent means. Conversely, a machine or device which performs the same function or accomplishes the same result by substantially different means, or by a substantially different principle or mode of operation, or in a substantially different way, does not infringe the patented invention. Swan Carburetor Co. v. Chrysler Corp., 130 F.2d 391 (C.C.A. 6); Flowers v. Austin-Western Co., 149 F.2d 955 (C.C.A. 7); Montgomery Ward & Co. v. Clair, 123 F.2d 878 (C.C.A. 8); Wheat v. Ford Motor Co., 118 F.2d 612 (C.C.A. 8); Holtzer-Cabot Electric Co. v. Standard Electric Time Co., 111 F.2d 71 (C.C.A. 1); Shakespeare Co. v. Perrine Mfg. Co., 91 F.2d 199 (C.C.A. 8).

In resolving the question whether there is identity of method, means, and mode of operation between the Bearfoot side wall and the Nickerson side wall, it is necessary to compare their operation.

The Bearfoot side wall has a lip. The lip is that part of the side wall which is squeezed and held between the rim flange and the tire casing. At the top of the lip, the side wall continues to extend, but is spaced away from the tire casing by a "lateral connecting bridge" of said side wall. This lateral bridge, after being spaced away from the tire casing, turns almost at a right angle to the connecting bridge and continues its extension, facing the tire, but spaced away from it. This extension curves inwardly toward the tire casing, the top of the side wall being tipped toward the tire and contacting the tire when the latter is inflated. The Bearfoot side wall is kept away from the lower part of the tire, or, in other words, there is a space between the side wall and the lower part of the tire. When the tire is inflated, the base of the side wall, immediately above the rim, continued to be spaced away from the tire wall, but the top part of the side wall, curving and tipped inwardly, contacts the middle or upper part of the tire wall. The fact that there is a space between the side wall and the tire wall immediately above the rim accounts for the fact that the Bearfoot side wall operates successfully whether the tire wall has a pronounced lug on it, or whether it is a low pressure, balloon type of tire, or a high pressure tire similar to those that were generally used in earlier years. The circumstance that the tire may have a pronounced lug on it, or is a low pressure, balloon type, has no effect on the operation of the Bearfoot side wall, the reason being that as the

tire is inflated, it does not come in contact with the side wall except where it is tipped inwardly at the middle or upper part of the tire, and consequently does not press the side wall away, leaving the outer edge flaring from the tire.

Strangely enough, the lateral bridge and the spacing of the side wall away from the tire, immediately above the rim, do not appear to be a part of Barnes' teaching. This device seems to be something developed by Bearfoot; and it is to be noted that appellants in their brief stated:

"The Bearfoot side walls departed sharply from the teachings of Nickerson by incorporating the lateral connecting bridge to space the base of the side wall away from the tire immediately above the rim, and thereby assure contact between the tire and the outer portion of the side wall."

Whatever the origin of the Bearfoot accused side walls, they are operable, where Nickerson's are not; and they do not function as Nickerson claims his side wall functions.

The fact that a tire may have a pronounced lug on it, or is a low pressure balloon type, does have an effect on the operation of a side wall made in accordance with Nickerson's patent, and results in such side wall being inoperable, under these circumstances.

The reason why the Nickerson side wall is inoperable under the foregoing circumstances is because the low pressure balloon type of tire with the pronounced lug, when inflated, presses against the lower part of Nickerson's side wall, just above the rim, and pushing against the lower part of the side wall, causes it to lean away from the tire. This fact is clear from the undisputed testimony, and the admission of appellee's counsel that the Nickerson side wall would not successfully operate with a low pressure tire having a pronounced lug. Appellants claim that Nickerson's side wall would be inoperable with any tires, high pressure or low pressure, for the same reason that it would not be operable with low pressure tires having a pronounced lug. The evidence supporting this contention is persuasive; but we do not decide this case on the ground that Nickerson's patent is inoperable. In this regard, we leave the presumption of operability untouched, and do not interfere with the trial court's findings on this phase of the case.

But we are clearly of the view that the Bearfoot side wall as appears from the foregoing, because of its lateral bridge, resulting in the side wall being spaced away from the tire immediately above the rim, and assuring contact between the outer part of the side wall and the tire, accomplishes its result by a substantially different principle, means, and mode of operation, and in a substantially different way than Nickerson, and hence, does not in any way infringe the Nickerson patent.

It is to be remarked that the expert witnesses for each side differed completely on practically all of the facts of the case, even in describing the simplest objects before them. Appellee's witness declared that the Bearfoot side wall had the hump, cut-out, and flat portion which Nickerson had claimed as the patentable features of his side wall. The expert witnesses for Bearfoot absolutely denied that Bearfoot had a hump, cut-out, and flat portion. The Bearfoot side wall was in evidence, and was used in their testimony, as recited above, by the experts for both sides. Measurements were computed in thousandths of an inch, and such circumstances easily enables one expert to define differences, in contradicting opposing witnesses. The Nickerson side wall does not resemble the Bearfoot side wall in appearance.

The cross section of the Nickerson side wall appears as a long rather thick wedge of rubber turned inwardly toward the tire, with a lip at its lower inner end. The cross section of the Bearfoot side wall appears as a comparatively thin piece of rubber shaped like a sickle, the lip appearing where the handle of the

sickle would be. The fact that testimony, introduced in behalf of appellee, was to the effect that the Bearfoot side wall had a flat portion, a cut-out, and a hump of greatest thickness as found in Nickerson, and that the court found that the Bearfoot side walls contained all these features and therefore infringed Nickerson's patent, is not controlling.

 "An abundance of authority sustains the point that a defendant's device may be within the language of a claim and not be an infringement; that an infringement is not a mere matter of words. General Electric Co. v. Allis-Chalmers Co., 178 F. 273, 276 (3 C.C.A.); Id. (C.C.) [General Electric Co. v. Allis-Chalmers Co.] 171 F. 666, 669, citing Westinghouse v. Boyden [Power-Brake Co.], 170 U.S. 537, 18 S.Ct. 707, 42 L.Ed. 1136." Henderson v. Welch Dry Kiln Co., 26 F.2d 810, 814.

 "We note that appellant contends that the claims of the patent in suit read upon appellees' device. We may assume that this is true, * * *. But infringement is not a mere matter of words. Henderson v. Welch Dry Kiln Co., D.C., 26 F.2d 810, 814; Goodyear Shoe Mach. Co. v. Spaulding, C.C., 101 F. 990, 994; Linde Air Products Co. v. Morse Dry Dock & Repair Co., 2 Cir., 246 F. 834, 838; Bird v. Elaborated Roofing Co. of Buffalo, 2 Cir., 256 F. 366, 373. Here, we hold that the mode of operation is different and that there is no equivalency of means." Grant v. Koppl, 99 F.2d 106, 110 (C.C.A. 9).

"Appellant cites, as evidence of infringement, the testimony of his expert witness, George J. Henry, to the effect that some of the claims in suit read upon appellee's machine. This, appellant contends, was sufficient to require submission of the case to the jury. The contention is rejected. Infringement is not proved merely by reading a claim upon an accused device. For infringement is not a mere matter of words. Grant v. Koppl, 9 Cir., 99 F.2d 106, 110. The evidence shows conclusively that, properly construed, the claims in suit were not in-

fringed by appellee. That being so, it is immaterial—if true—that some of the claims read upon appellee's machine." McRoskey v. Braun Mattress Co., 107 F.2d 143, 147 (C.C.A. 9).

 "Infringement should not be determined by a mere decision that the terms of a claim of a valid patent are applicable to the defendant's device. Two things are not necessarily similar in a practical sense because the same words are applicable to each. The question of infringement involves considerations of practical utility and of substantial identity, and therefore must be quantitative, as well as qualitative." Goodyear Shoe Mach. Co. v. Spaulding, 101 F. 990, 994.

 "There is no magic in a name, nor in a claim; that the words preferred by a patentee to define his invention apply literally to another's device suggests, but does not prove, infringement; there must be a substantial identity, to justify that conclusion of law. Edison v. American [Mutoscope & Biograph] Co. [2 Cir.], 151 F. 767." Linde Air Products Co. v. Morse Dry Dock & Repair Co., 246 F. 834, 838 (C.C.A. 2).

Accepting appellee's contention that appellants' side wall reads upon the side wall of appellee; that, in appellants' side wall, there is a hump of greatest thickness; a cut-out; a flat portion; and that appellants' side wall is within the language of appellee's claim, nevertheless, there is no infringement by appellants, for the mode of operation of their side wall is different, and there is no equivalency of means.

Since we have concluded that there is no substantial identity of mode of operation between the Bearfoot side wall and the Nickerson side wall, the findings that Bearfoot has the flat portion, the cut-out, and the hump of greatest thickness, found in Nickerson, are not of consequence.

It is contended by appellee that a demonstration of the claimed Nickerson side wall, made in court, by appellants, was invalid, unfair, and deceptive, be-

cause the lip of the side wall in question was foreshortened by ¼ inch—contrary to the lip disclosed in the Nickerson patent—creating a hidden vacancy between the inner periphery of the lip and the bead seat, and caused the side wall to gap away from the tire. However, a similar demonstration was made with the same side wall bolted in place so that there could be no hidden vacancy, and the side wall gapped away from the tire in the same way. While this is not of transcendent importance, in the decision of the case, it deprives of force appellee's contention that the experiment was deliberately deceptive.

"The grant of a patent is presumptive evidence of its validity and the finding of the District Judge as to a fact is entitled to great weight. But when the full facts as to what constitutes the invention are, as here, undisputed, it remains at last, for this court, giving due regard to the weight to be given to the grant of the patent and the finding of invention by the District Judge, to examine the record for itself and to determine whether, within the meaning of the statute conferring patent monopoly, there is invention and therefore patentability. The presumption of patentability which attends the grant of a patent cannot survive in the face of undisputed facts showing that there is no invention." Butex Gas Co. v. Southern Steel Co., 5 Cir., 123 F.2d 954, 955.

In accordance with the foregoing, it is our conclusion that the patent claims sued upon are invalid for want of invention, and, furthermore, that, if they were valid, appellants are not chargeable with infringement, since, there is no identity of mode of operation between the side wall of appellee's patent and appellants' accused side walls.

The determination of other issues raised is unnecessary to decision.

The judgment is, therefore, reversed, and the case remanded for entry of a judgment in compliance with this opinion.